## HUMBLE OIL & REFINING CO. v. EIGHTH REGIONAL WAR LABOR BOARD et al.

### Clv. A. No. 1165.

District Court, N. D. Texas, Dallas Division.

Sept. 21, 1944.

Rex G. Baker, R. E. Seagler, John Q. Weatherly, and John H. Crooker, all of Houston, Tex., and Neth L. Leachman, of Dallas, Tex., for plaintiff.

Francis M. Shea, Asst. Atty. Gen., Clyde O. Eastus, U. S. Dist. Atty., of Dallas, Tex., David A. Turner, Atty., Department of Justice, of Washington, D. C., and Frank B. Potter, Asst. U. S. Dist. Atty., of Fort Worth, Tex., for defendants.

ATWELL, District Judge.

The bill covers forty-five pages and twenty-two pages of exhibits. There are sixty odd defendants, including the Eighth Regional War Labor Board, the National War Labor Board, and the officers of each; certain officers of the Petroleum Administration of War, the Economic Stabilization Director, the Petroleum Administration of War, Harold L. Ickes, Ralph K. Davies, George E. Dewey, individually, and as connected with the last above mentioned administrative agencies; thirty-one defendants alleged to be in Dallas, twenty-three in Washington, three executive agencies in Washington, and a few other defendants in other places and districts.

Sufficient jurisdictional facts are alleged.

The petition shows that the plaintiff has approximately thirteen thousand employees engaged in various phases of the oil business, such as production, transportation, storage, refining, etc. That it has a refinery at Baytown, Texas, and one at Ingleside, Texas; in the latter of which it has

four hundred and fifty employees, and is processing thirty-one thousand barrels of crude daily, and is furnishing a large part of its output for the war effort and under war contracts. That it has in its business nineteen different labor contracts with no serious labor disputes at any point or place. That the relation between itself and its employees is happy and pleasant.

That the labor bargaining agent with it at Ingleside was the C.I.O. That the contract which expired there in 1943 provided for its continuation for 1944 unless notice of dissatisfaction was given within a certain limit. That the 1944 contract was signed, but that the C.I.O. retained the right to present its contention that there should be added to it a maintenance of membership clause which would obligate the plaintiff to discharge any member failing to pay dues, or, to maintain his union membership. This clause the plaintiff refused to put in the contract. It claimed that such a clause would bring about unhappy relations between it and its employees. Thereupon, the C.I.O. appealed to the Tri-Partite panel at Dallas, which panel approved the plaintiff's position. The matter was then presented to the Eighth Regional War Labor Board, which also approved and denied the right to demand the maintenance clause. That the C.I.O. then went to the National War Labor Board at Washington, presenting to it only such matters as had been presented to the Eighth Regional War Labor Board. Plaintiff notified the National War Labor Board that it assumed that it would be given a right to be heard. Such hearing was denied it, and on April 1, 1944, the action of the panel and of the Eighth Regional War Labor Board was overruled and the insertion of the membership clause was ordered. This order was not made known to it until April 24, 1944.

Plaintiff alleges that there are a number of its employees at Ingleside who have belonged to the union, but are delinquent in the payment of their dues, and do not intend to pay dues, and that there are a number of employees who for other reasons desire to discontinue their Union membership, and the plaintiff fears that if a maintenance of Union membership clause is required to be inserted in said contract it will be requested and required to discharge such employees, or, that such employees will quit their work if such maintenance membership enforcement is required. That replacements are not available, and such dis-charges would impair the efficiency and economic operation of the refinery and affect its production and other operations throughout the state of Texas, and thereby impair its war effort and efficiency.

That such requirement would be in violation of the War Labor Disputes Act, 50 U.S.C.A.Appendix §§ 309, 1501–1511, and that such requirement would be injurious, oppress, threaten and intimidate plaintiff and its employees in the free exercise and enjoyment of the rights and privileges secured to them by the Constitution of the United States, the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and "other general laws of the United States." That such order of the National War Labor Board is illegal and void since it is not based upon or supported by any evidence adduced before the Tri-Partite panel, the Regional Board, or, the National War Labor Board. That all of the evidence supports the findings of the panel and of the Regional Board. That the order did not result from its decision of the issue presented, but is the attempt of the Board to legislate and set up arbitrarily a general policy. That it is a mere dictatorial fiat, based upon a determination to maintain membership in labor organizations in the face of and contrary to the facts and evidence, and thus amounts to an order without a hearing as directed by Sec. 7(a) (1) of the War Labor Disputes Act, and is arbitrary and capricious. That the order would not and does not further the war effort, but would deter that effort and is contrary to the object and purpose of said Disputes Act. That neither the Disputes Act nor any other Act of Congress gave the National War Labor Board, or any other Board any power, authority or jurisdiction to make or to enforce the order of the National War Labor Board complained of. That neither the Disputes Act, nor any other Act of Congress gave the National Board, the Economic Director, or any other Board, Bureau, Commission, or other governmental agency any power to enforce or to attempt to enforce against the plaintiff any penalties or sanctions for its failure to obey or comply with the said order of the National War Labor Board of which it complains. That said order violates the War Labor Disputes Act in that it would require plaintiff to interfere with the free choice of its employees to resign from the Union, and to discriminate against employees if they failed to maintain their membership. Sec.

8(1) and (3), 29 U.S.C.A. § 158(1, 3). That the enforcement of such order would require the discharge of an employee on the sole ground that he exercised his free choice to belong to a Union or not to belong. It adds that the order violates the Disputes Act in other respects, and also is in violation of the Fifth Amendment of the Constitution, specifying wherein such enforcement would so violate.

That on August 16, 1943 the President issued Executive Order No. 9370, in which he undertook to authorize defendant Vinson, Economic Stabilization Director, to "effectuate compliance with directive orders of the National War Labor Board * * * [and] to issue such directives as he may deem necessary; [and] to other departments or agencies of the Government * * * relating to withholding or withdrawing from a non-complying employer any priorities, benefits or privileges extended, or contracts entered into, by executive action of the Government, until the said National War Labor Board has reported that compliance has been effectuated; * * * [and] to the War Manpower Commission, in the case of non-complying individuals, directing the entry of appropriate orders relating to the modification or cancellation of draft deferments or employment privileges, or both."

That on August 16, 1943 the President sent a letter to defendant Davies, Chairman of the National War Labor Board, in connection with Executive Order No. 9370, wherein he advised the said Davies to the above effect, and that the said Davies was empowered "when an employer refuses to comply, his plant may be seized and operated by the government in accordance with the terms and conditions of employment by the government prescribed by the Board." The letter then provides that "less drastic sanctions however, including control of war contracts, of essential materials, and of transportation fuel, shall be applied if this can be done without impeding the war effort." "I am accordingly requesting the Director of Economic Stabilization to direct the application of any or all available sanctions of this sort by the appropriate agencies of the government, in cases of non-compliance reported to him by the Board."

That such instructions and authorizations were not authorized by the Congress, nor was this order, April 1, 1944, complained of by the plaintiff authorized by the Congress.

That the President has no power, under the Constitution and laws of the United States, to so direct.

That in furtherance of such program against the plaintiff, the defendants, National War Labor Board and Regional Board, have refused to pass upon or process wage and salary rate applications made by the plaintiff. That such processing is equitably and reasonably required, in order to increase payments to certain of the plaintiff's employees, and that such refusal results in serious injury to the industrial relations between the company and its employees and interferes with the production of vital war material. "That the National War Labor Board and the Eighth Regional War Labor Board have sought and are seeking by underhanded and secretive ways and means to coerce and compel plaintiff to comply with said order of April 1, 1944."

"That the majority of the members of the National War Labor Board are acting together and in concert to compel and coerce the plaintiff to put into effect its illegal, wrongful and injurious order and to impose upon plaintiff sanctions and penalties and the other injustices shown * * *." That it has actually begun the imposition of such penalties at its Baytown refinery and has threatened the same action and a seizure at Ingleside.

That the defendant Vinson, Director, as aforesaid, through reports and notices, secured the cooperation of defendants Ickes, Davies and Dewey, and induced them to join them and the other defendants in the conspiracy as herein alleged against the plaintiff and, to also include in the object of the conspiracy, "the unlawful taking over, by force, the plaintiff's entire plant, facilities and operations at Ingleside." That it has no remedy for the securing of damages in the event such wrongful act or acts are permitted.

It seeks a declaratory judgment with reference to the alleged illegality of the actions of the National War Labor Board, of the President's Order No. 9370, and of the President's letter to defendant Davies in connection with said order, as well as restraints, temporary and permanent.

Notices were issued requiring the defendants to show cause at an early date why a temporary injunction should not issue, and temporary restraint was put into force, upon the giving of a $10,000 bond by the plaintiff until that date. Before that date the defendants asked for a postponement

until Wednesday, September 20th, and, it being agreeable to the plaintiff, an order was entered to that effect, and continuing the restraint.

All parties being today present, the defendants presented two motions; one to dismiss for want of jurisdiction over non-resident defendants, and the other for a summary judgment. There is and was no answer on the merits.

The parties agreed in open court to submit testimony by affidavits. The affidavits of the defendants are to the effect that they have no power to seize, or, order a seizure of the plaintiff's property. That the sanctions which had been ordered, because of the plaintiff's failure to agree to a maintenance of membership clause in the contract were without authority and had been withdrawn on the day after the suit was filed.

The affidavits of the plaintiff support the allegations of its petition and show that the non-resident plaintiffs assisted and were concerned in the representations and threats made to the plaintiff as to the imminent seizure of its property.

█ The first contention of the defendants is that a powerless threat will not concern the chancellor and it is only a threat which the maker has power to enforce that equity may stay. That argument fails to differentiate between power and authority. For the exercise of power under our constitutional system there must be authority. It is the contention of the plaintiff that there was, and is no authority which would support either a threat to seize, or, an actual seizure, or, which would authorize the imposition of sanctions.

The careful thinker also recognizes that the word, "power," may not necessarily include that which is lawful. A rather crude and somewhat superlative illustration might be had in the presence of a bandit with a drawn gun. He enters a bank, coerces, terrorizes and receives from the servant handling the cash, what he demands. He has no right to it. There is nothing legal that supports his demand. The bank teller makes no concession of legality, or, authority, or, righteousness, by handing over what the gunman demands. ·

I think we might well consider legality, and right, and authority, as limitations of the word, "power." As we ordinarily understand it, we mean such authority, or, right, or, legality, as is vested in the duly constituted authorities by the Constitution, or some Act of Congress, or, some valid order of a court having jurisdiction.

The acquiescence of the defendants with the allegations of the plaintiff that the defendants were attempting to do that which they had no power to do, with the above observations, leaves the question in its bare simplicity.

The testimony drives the court to find as a fact, that unlawful and illegal sanctions were imposed. Such sanctions were being carried out. Threats were made to seize the plaintiff's property at Ingleside. Those who claim a refuge in Washington, in certain marked instances, communicated with the agents, or, with the plaintiff in Texas, and with agents in this district. They, likewise, came into Texas. They declined to talk of the merits of the order with reference to sanctions that had been imposed. They demanded immediate compliance by the insertion of a membership clause in the war contract. They announced that the seizure would take place by the 8th of September. When the plaintiff asked for a postponement until September 11th, that request was refused. Those who made those threats were in authority. They were in positions of power. They were advisors of the President. They were recipients of previous instructions from the President. Those messengers and agents who came from Washington declared that they desired to ascertain the disposition of the plaintiff with reference to the continuation of the operation of the plant after its seizure.

About those facts there can be no difference of opinion. They may not be excused, nor said to be harmless, nor said to be beyond the reach of a court of equity, because the ultimate and final decision would come from the Chief Executive of the nation. The citizen had a right to assume, and the court does assume, that those in positions of presumptive high authority were not misrepresenting. They intended to do what they said they were going to do. It would be harsh indeed to assert that they were attempting to coerce by deception, or, by false representation.

That the man does not mean to shoot who holds the gun, may not be a defense to his illegal act. He intended that his victim should believe that he would use the gun, and because of that belief he would secure from his victim what he sought and demanded.

The second position of the defendants is that they are beyond the reach of the court's jurisdiction, because they reside at Washington. Injunctive restraint must be observed by the whole world. Anyone having knowledge is thereby deterred from committing the act, or participating in the act which is, or, would be a violation of the order. Equity is not a weakling. It is a strong, well-matured, thoughtful, all-seeing, careful protector against turmoil and disturbance and destruction of the citizen's rights, liberties and freedoms.

The third position of the defendants is that the plant "might or might not" be seized. The mere statement of that position at the bar of a court of equity surprises. As has already been indicated, the citizen, as well as the court, has long since learned to treat a threat which is believed to be for the execution of some act which is illegal or wrong, or without authority, as a sufficient basis for restraint of the person making it. Such jurisdiction is in the interest of peace and civilization. It takes the place of the six-shooter, and the shotgun. It is the resort to the people's forum for a guarding arm during and against an impending, or, threatened wrong.

Another position of the defendants is that an injunction is not necessary if there is no reasonable ground upon which the chancellor may find that there is any fear of the harm being attempted, or, accomplished, or, if the original harm threatened has been conceded to have been illegal and has been remedied. There is testimony to the effect that after the institution of the suit, a communication from the National War Labor Board to the Eighth Regional Labor Board, directed the latter to discontinue its observance of the previous order by the National War Labor Board, and to proceed to process wage applications made by the plaintiff.

Argument at the bar indicates that no processing has been done up to the time of this hearing. The testimony shows that there had been, and is now, no labor dispute whatever between the plaintiff and its employees. That the failure to process its applications for the right to raise wages is resulting in dissatisfaction. If, therefore, there is any unsettling of satisfaction on the part of employees, it is because of the acts of the defendants, and not because of any act of the plaintiff.

The facts also show that this plaintiff is engaged in a highly important war activity. It is furnishing approximately thirty-one thousand barrels of war material every day. That is an activity that no one ought to be permitted to destroy, or, to interfere with, or, to disturb. That is what the people are interested in. That is the real public interest. To seize the plant, or, to continue to impose sanctions, when all recognize that those sanctions were and are invalid, is to do that very thing.

So, we come to the last thought which is that the chancellor balances the equities. Search as we may for the equities of the defendants, we fail to find them. The equities are all with the plaintiff. Public interest is with the plaintiff. The safety of our war machine is not entirely with the plaintiff, but at least partially with the plaintiff. No harm can come by restraining the defendants. Serious harm might come if a temporary injunction were not granted.

It must be borne in mind that the bill alleges a conspiracy on the part of the defendants. The facts justify that allegation. The issues are not dead issues. Nor was the cessation of the failure to process entirely voluntary. The contention still exists.

The question of a declaratory judgment, and the ultimate trial on a more thorough exposure of the facts, may be pretermitted until the coming of that day.

Each side has furnished the court thorough and thoughtful and learned briefs, but a citation of cases seems unnecessary at this time.

The temporary injunctive order will be drawn in accordance with 28 U.S.C.A. § 383; Rule 65 (d), Civil Procedure, 28 U.S. C.A. following section 723c. Approved as to form by defendants' counsel in which such exception may be retained as they may desire.