**Oscar L. GREEN, Robert A. Green, Quentin L. Green and Alice Green, Plaintiffs-Appellees,**

**v.**

**Herschel S. GREEN and Madge Green, Defendants-Appellants.**

**No. 11124.**

United States Court of Appeals, Seventh Circuit.

Dec. 20, 1954.

Rehearing Denied Jan. 20, 1955.

---

August F. Brandt, Grosse Pointe, Mich., Jackson R. Hutton, Hutton, Clark & Hutton, Danville, Ill., for plaintiffs-appellees.

G. William Horsley, L. H. Lenz, Springfield, Ill., for defendants-appellants.

Before DUFFY, Chief Judge, and MAJOR and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendants appeal from an order entered by the District Court on January 26, 1954.

On November 2, 1935, James A. Green, the father of Oscar L. Green and Herschel S. Green, died, leaving a will wherein he left all of his estate to his wife, Martha Green, for her life with power to sell or dispose of the same as she thought best, provided she secured the consent of the trustee therein named, Herschel S. Green. All of the residue of his estate, which remained at the death of his wife Martha, was bequeathed to Herschel in trust. The income of this trust was to be paid in equal shares to Oscar and Herschel at such times as the trustee might think best for the estate. In the event that either son died, his portion of the income was to be paid to his children, if any, and upon the death of both of the sons, the estate was to be divided equally between the children. Herschel was appointed both executor and trustee under the terms of this will. The will was probated in the County Court of Crawford County, Illinois, and on May 22, 1939, the estate of James A. Green was closed and the executor discharged. At the time of his death testator owned certain farms and his wife Martha likewise owned farm land.

On April 9, 1942, Martha Green died, leaving a will and a codicil, which were duly probated in the County Court of Crawford County, Illinois. The will of Martha was identical with that of her husband James, in that it provided that James should have a life estate in all of her properties, with the residue remaining on the death of James left to Herschel in trust, with provisions similar to those contained in the will of her husband. Her codicil made one change, however, in that upon the death of either Herschel or Oscar without any children surviving, his widow was given a life estate in the income of the trust until she died or remarried. Herschel was appointed both executor and the trustee under the will and codicil of Martha. Letters were issued to Herschel by the County Court of Crawford County on July 9, 1942. This estate has not been closed and he is still the executor.

After the death of James, Oscar continued to operate all of the farm properties, until about September 15, 1936, when Herschel took over their operation. On February 23, 1938, Herschel entered into an agreement with his mother Martha for the operation of all of these farm properties as one unit and thereupon continued to so operate them. After her death he continued such operation.

On July 13, 1949, Oscar filed a petition in the Circuit Court of Crawford County, Illinois, seeking an order requiring Herschel to file an accounting of all his acts and doings as trustee under the will of Martha. This petition is entitled "In the Matter of Herschel S. Green, Trustee under the Will of Martha Green, Deceased." It alleges the death of Martha Green, unmarried widow of James A. Green, leaving a last will, with a codicil thereto attached, appointing defendant Herschel S. Green as trustee under a certain trust therein created; the admission of the will and codicil to probate in the County Court of Crawford County and the qualification and assumption of duties by Herschel as trustee thereunder; that Oscar is a beneficiary of the trust created by said will and codicil; that thereunder the trustee was authorized and directed to take charge of, manage, operate and control all personal property and all farm lands, all of which was part of the trust estate, and to receive all income therefrom and from such income to pay all necessary expenses, taxes, and other items of upkeep and after the payment thereof the trustee of said trust estate was directed to divide the net balance remaining, in equal parts, between the petitioner and the said Herschel S. Green at such time as the said Herschel S. Green, trustee thought best for said estate; that all of the trust estate con-

sists of real and personal property located within the State of Illinois.

Petitioner also charged that the trustee herein in the administration of his trust, and in the performance of his duties as such trustee, has received various amounts of money as income, profits, and rents of such trust estate; that petitioner had repeatedly demanded an accounting from the trustee but trustee refused to make an accounting of his acts and doings. No parties to the suit are named except Oscar and Herschel. Summons was served on Herschel, the trustee, on July 19, 1949, and beginning on September 30, 1949 and ending August 31, 1953, he filed in said court a series of reports of his acts. All of the foregoing reports were entitled "In the matter of Herschel S. Green, Trustee of the Estates of James Green, deceased, and Martha Green, Deceased" and said reports were combined as to all of the said assets of the two estates and the expenditures therefrom.

The complaint in the District Court was filed on November 8, 1951. In this complaint the plaintiffs sought an accounting of Herschel, as to the estates of both James and Martha. Plaintiffs named in this suit were Oscar and his two children, Robert A. Green and Quentin L. Green, who were remaindermen under the wills of both James and Martha, and the defendants were Herschel, the trustee of both trusts, and his wife, Madge, who is a contingent life income beneficiary under the terms of the codicil of Martha.

The amended complaint, filed on January 9, 1952, alleges that plaintiffs are residents and citizens of the State of Texas and that the defendants are residents and citizens of the County of Crawford, State of Illinois, and that the ground upon which the jurisdiction of the District Court depends is diversity of citizenship between the parties, the amount in controversy exceeding the sum of $3,000. It also alleges that Robert and Quentin, sons of Oscar, and Madge, wife of Herschel, are the only living, successive heirs, beneficiaries and re-

maindermen under the terms of the testamentary trusts set up by the will of James and the will and codicil of Martha. It also charges Herschel with having exclusive possession of all of the farm lands in question and his wrongful refusal to furnish plaintiffs with correct information concerning the trust properties. It refers to the petition for accounting filed by Oscar in the Circuit Court of Crawford County and the filing of reports therein by Herschel. It charges that Herschel in said reports wrongfully combined his personal items with those of both trusts, making it impossible to determine the true total receipts or disbursements of either trust. It charges Herschel with fraudulent concealment of the true income of both trusts and with wrongfully transferring assets from the James trust to the Martha trust, as well as other misconduct.

The amended complaint demands that the District Court assume jurisdiction over all property belonging to the James trust and that an accounting be required of Herschel, who should be required by the court to "immediately restore" to the James trust all money found due from Herschel together with interest thereon; that Herschel be removed as trustee under the James will and some other person appointed to succeed him; that the District Court determine what money Herschel has wrongfully paid to himself as co-beneficiary under the terms of the James and Martha trusts respectively, and that the court award to Oscar his just portion thereof with interest. It also demands that Herschel be required to restore to the Martha trust any money or property lost thereto "by virtue of his fraudulent, illegal, and negligent conduct," and that judgment be entered personally against Herschel in favor of Oscar, for the amount which should have been distributed by Herschel as trustee under the will of Martha. It contains a general prayer for relief.

Madge is not mentioned in any part of the amended complaint or in the prayer for relief therein, except in the opening paragraph where it is recited that plain-

tiffs "complain of Herschel S. Green and Madge Green, defendants, * * *."

On December 17, 1951, the defendants filed a motion to dismiss the complaint or to stay all proceedings until the determination of the Crawford County case, which motion was later ordered to stand to the amended complaint. That motion is based on the contention that the District Court action and the Crawford County action are for identical relief and between substantially the same parties, that no relief can be obtained in the District Court that could not be obtained in the Circuit Court suit. Attached to the motion are copies of the pleadings and proceedings filed and entered in the Circuit Court case. On January 14, 1952, the District Court denied the motion.

On February 2, 1952, defendants filed an answer to the amended complaint, in which they say that Alice Green, the wife of Oscar, is now alive and has as much interest under said trust as the defendant Madge. The answer denies all misconduct charged against Herschel.

On the same day the defendants Madge individually, and Herschel, individually and as trustee under the James and Martha wills and as executor of the Martha estate, filed a counter-complaint praying for an order requiring Oscar to account relative to his acts in operating said estates, and to the said Herschel individually, and that a personal judgment be entered against Oscar and in favor of counter-complainants or Herschel as trustee or as executor of the estate of Martha deceased for any amounts appearing to be due from Oscar. Madge is not mentioned in the counter-complaint except as being identified with Herschel as a counter-complainant.

On February 20, 1952, the plaintiffs answered the counter-complaint, and on February 20, 1952, plaintiffs replied to the answer of the defendants, admitting that Alice, the wife of Oscar, is now alive, but denied that she has the same interest "under said trust as Madge inasmuch as Oscar now has two children living, whereas said Herschel is without lawful issue."

Following the taking of evidence in the District Court on October 27, 1952, Herschel tendered to that court his resignation as trustee under the James will and also as trustee under the Martha will and her codicil and agreeing that "if counsel cannot agree upon a successor trustee, the court shall appoint one in ten days." On the same day the court entered an order accepting the resignation and directing Herschel to make an accounting as trustee in said estates. On November 10, 1952, the court appointed Chauncey M. Rains as successor trustee in both trust estates.

On December 17, 1952, the court entered an order that Herschel make an accounting as trustee in the James and Martha estates within ten days. On March 16, 1953, the court entered an order upon the motion of Herschel granting him permission to file an amended account on or before April 16, 1953. On August 3, 1953, on a petition presented by Oscar, the court ordered Herschel to cease interfering with the supervision of the trustee appointed by the court and within 20 days deliver up possession of said trust property to said trustee and setting the case for trial on September 3, 1953.

On September 10, 1953, the defendants filed a motion "to dismiss the complaint as amended and to abate all further proceedings in this matter, and for certain injunctive relief." The grounds stated for the motion were the pendency of the Circuit Court case, the pendency of the estate of Martha in the County Court of Crawford County, and that Oscar had been guilty of laches in not filing objections to the reports filed in the Crawford County Circuit Court.

On December 5, 1953, Alice, wife of Oscar, made a motion requesting to be joined as a party plaintiff.

On December 9, 1953, defendants filed a second motion to dismiss and to abate proceedings and for certain injunctive relief. As grounds therefor they say: "That it appears from the allegations of paragraph 8 of the original complaint in

this cause, and paragraph 8 of the amended complaint in this cause, that the Defendant Madge Green is joined in this suit merely for the reason that she is one of the living contingent beneficiaries under the testamentary trusts which are the subject matter of this suit. That there are no allegations in either the complaint or the amended complaint suggesting that Madge was a party to any of the alleged misconduct on the part of the Trustee, Herschel, and nowhere is any relief prayed against her on behalf of the plaintiffs in the present suit. That there are no allegations in the complaint or the amended complaint that said Madge refused to join as a party plaintiff in said suit and there are no allegations to show that her interest is any different than that of the other beneficiaries of the trusts which are the subject matter of this suit. That the real interest of the Defendant Madge is the same as that of the plaintiffs, who are the other beneficiaries under the trusts which are the subject matter of this suit. That the Defendant Madge is now and has been since the filing of this suit a resident and citizen of the State of Illinois. That the Defendant Herschel is now and has been since the filing of his suit a resident and citizen of the State of Illinois. That if the Defendant Madge is realigned as a party plaintiff according to her real interest in this suit, there would be a citizen of the State of Illinois as plaintiff and a citizen of the State of Illinois as the defendant. That the jurisdiction of this court is invoked on the grounds of diversity of citizenship and there is no diversity of citizenship in this suit if the present Defendant, Madge, is realigned as a party plaintiff according to her real interest. That the Defendants raised this ground for lack of jurisdiction on the part of this Court as an alternative and in addition to the grounds alleged in the motion to dismiss and to abate proceedings and for injunctive relief." The defendants asked the court to dismiss the proceedings in their entirety and abate any further action, discharge the trustee theretofore appointed and enjoin the trustee appointed by the Court from taking any further action in this matter.

On January 26, 1954, the aforesaid motion of the defendants was denied and the motion of Alice to become a party plaintiff was allowed, she to be bound by all previous orders entered in the case.

On February 5, 1954, defendants filed a motion praying for an injunction pending an appeal to this court, restraining plaintiffs from further prosecution of the suit during the pendency of the appeal and also enjoining the successor trustee from managing in any way the trust property or disposing of same except as is reasonably necessary for its preservation, or in the alternative, that the plaintiffs be enjoined from further prosecuting the suit pending appeal by the defendants.

On February 8, 1954, a notice of appeal was filed by defendants appealing to this court from the order entered January 26, 1954, "wherein said court denied the amended motion to dismiss and to abate proceedings and for injunctive relief, and the supplementary or second motion to dismiss and to abate proceedings and for injunctive relief, and wherein said court granted the motion of Alice allowing her to enter her appearance in this cause to become a party-plaintiff * * *."

On the same day the court entered an order that because of the notice of appeal the court was without jurisdiction as to any stay or injunction as requested in their motion for stay or motion for injunction pending appeal. The court on February 10, 1954, approved and ordered filed a supersedeas bond tendered by defendants.

1. Defendants have appealed from an order which among other things denied their amended motion for an injunction restraining the successor trustee appointed by the District Court from acting as such, on the ground that the court was without jurisdiction of the case.

Defendants' appeal from this interlocutory order is authorized by 28 U.S.C.A. § 1292, which reads, in part, as follows:

"The courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States, * * * refusing * * injunctions, * * *."

2. Both in the District Court and here defendants contend that the District Court has no jurisdiction of this case. That question this court may determine upon an interlocutory appeal.

A federal appellate court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a case under review. Mitchell v. Maurer, 293 U.S. 237, at page 244, 55 S.Ct. 162, 79 L.Ed. 338.

In Spring v. Ohio Oil Co., 5 Cir., 108 F.2d 560, the Ohio Oil Company brought suit against Spring to remove cloud on title, to quiet possession, and for interlocutory and final injunctions. From a judgment granting an interlocutory injunction, defendant appealed. The court said, 108 F.2d at page 561:

"The case is not here on the merits and the sole question presented for decision is whether the District Judge abused his discretion in granting an interlocutory injunction. Lea v. Vasco Products, 5 Cir., 81 F.2d 1011. Of course, in deciding that question we may consider whether the court was without jurisdiction."

In Eighth Regional War Labor Board v. Humble Oil & Refining Co., 5 Cir., 145 F.2d 462, Humble Oil & Refining Co. brought an action against the Eighth Regional War Labor Board and others for a declaratory judgment with reference to the alleged illegality of a directive of the National War Labor Board and the respective rights of the parties and for injunctive relief. From an interlocutory order of the District Court, 56 F. Supp. 950, granting a preliminary injunction, defendants appealed. The Humble Oil & Refining Co. contended that, since the appeal was from an order granting a temporary injunction, and the merits of the case had not been decided, the only issue before the court was whether the lower court abused its discretion in granting the preliminary injunction. But the court said, 145 F.2d at page 464:

"It is true that the nature of the appeal precludes a decision on the merits here, but the question of jurisdiction is always vital. A court must have jurisdiction as a prerequisite to the exercise of discretion. The question whether a court has abused its discretion necessarily involves the question whether a court has any discretion to abuse."

It is therefore our duty to proceed on the record before us to determine the question of jurisdiction.

3. The most serious challenge to the jurisdiction of the court is aimed at the contention of plaintiffs that there is a diversity of citizenship between the parties, the amended complaint alleging that plaintiffs are residents and citizens of Texas and that defendants are residents and citizens of Illinois. However, defendants maintain that Madge Green, named by plaintiffs as a defendant, should be realigned with the named plaintiffs, according to her real interest in the suit.

Section 2 of Article III of the United States constitution provides that the federal judicial power shall extend to cases arising between citizens of different states.

28 U.S.C.A. § 1332(a) provides in part:

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between: (1) Citizens of different States: * * *."

In making a determination as to whether diversity of citizenship exists in this case, we are first called upon to determine whether Madge Green is an indispensable party.

Madge Green, like Alice Green, has no legal or equitable interest in the trust established by James Green's will. Both of these women, however, are contingent remaindermen under the trust establish-

ed by Martha Green's will and codicil. Each of them will, upon the death of her husband without any children surviving him, have a life estate in the income of the trust until she dies or remarries. Each of these women will be similarly affected by any decree determining what money, if any, Herschel has wrongfully paid to himself as co-beneficiary of the Martha trust, and ordering Herschel to restore to that trust any money or property lost thereto "by virtue of his fraudulent, illegal, and negligent conduct," (and necessarily fixing the amount to be restored), all as prayed by plaintiffs.

In the motion of Alice Green that she be permitted to join as a plaintiff in the amended complaint, she states that "she is a contingent remainderman and as such she ought to be a plaintiff in this suit if complete relief is to be accorded between the persons already parties." It is apparent that for the same reasons Madge was made a party to the suit. As contingent remaindermen they are indispensable parties to the suit. In Baird v. People's Bank & Trust Co., 3 Cir., 120 F.2d 1001, at page 1003, 136 A.L.R. 693, the court said:

> "For an absent party to be in the third class, that is, indispensable, he must of course have a direct interest in the litigation. If this interest is such that it cannot be separated from that of the parties to the suit; if the court cannot render justice between the parties in his absence, if the decree will have an injurious effect upon his interest; or if the final determination of the controversy in his absence will be inconsistent with equity and good conscience, he is an indispensable party. State of Washington v. United States, 9 Cir., 87 F.2d 421. In our opinion the interest of the remaindermen is direct, distinct and nonseverable.

> "The portion of the complaint with which we are concerned relates to the administration by the trustees of the corpus of the trust. The relief sought is that certain specific investments, alleged to have been illegally made, be replaced with cash. The interest of the remaindermen in the corpus and in the specific investments is just as direct as that of the life tenants. Talbutt v. Security Trust Co., D.C., 22 F.Supp. 241; Franz v. Buder, 8 Cir., 11 F.2d 854. Since it is a succeeding interest it is not severable as an undivided present interest might be. It is obviously impossible to make a complete physical division of a trust fund between life tenants and remaindermen. But both are entitled to compel proper action with respect to the securities comprising the corpus of the trust. If they are permitted to resort to different courts for such relief inconsistent orders with respect to the same securities might well make orderly administration of the trust impossible.

> "It necessarily follows that the presence of the remaindermen is indispensable in an action by life tenants relating to the corpus of the trust fund."

This conclusion is supported by what we said in In Re National Realty Trust, 7 Cir., 167 F.2d 440, at page 443 (italics supplied):

> "A more serious question is whether the court could exercise such power without notice to the certificate holders and without according them an opportunity to be heard. It is the generally established rule in Illinois, *and we think elsewhere*, that in all actions concerning trust property the beneficiaries are necessary parties. Illinois National Bank of Springfield v. Gwinn, 390 Ill. 345, 61 N.E.2d 249, 159 A.L.R. 468; People's Bank & Trust Co. of Rockford v. Gregory, 347 Ill. 397, 398, 399, 179 N.E. 856; Martin v. Frank, 259 Ill.App. 417, 424."

Under Illinois law a "necessary party" is an "indispensable party." See Jones

v. Bryant, a case involving a testamentary trust, 204 Ill.App. 609, where, at page 617, the court said:

"Parties to actions are divided into necessary or indispensable parties, and proper but not indispensable parties. Necessary parties are those without whom the court will not proceed to a decree even as to the parties before it. '* * * Accordingly, persons whose interests will necessarily be affected by any decree that may be rendered are necessary and indispensable parties.' "

It is inherent in plaintiffs' argument in this court that Madge is a contingent beneficiary in the Martha trust and has a real interest in this case. They say in their brief:

"By Herschel's negligently and illegally commingling the assets of the two trust estates, Defendant Madge Green will wrongfully gain at the expense of the beneficiaries of the James Allen Green trust estate, should the contingent interests become vested. The defendants now seek to have ratified the wrongful acts of Defendant Herschel S. Green whereby, as trustee he caused the Martha Green trust to be unduly enriched to the undoubted advantage of his wife."

Indeed, in this court plaintiffs have never contended either that a contingent remainderman in a testamentary trust, or Madge Green specifically, is not an indispensable party. Plaintiffs, in their brief, in attempting to show that this case should take precedence over the suit filed in the state court by Oscar against Herschel, as trustee, point out that in the federal case "All beneficiaries and remaindermen of both aforesaid trust estates are parties," whereas they say that "the State court cannot obtain the *necessary* jurisdiction of such non-resident beneficiaries unless" they "voluntarily submit themselves to its jurisdiction." This argument shows that plaintiffs themselves believe that all beneficiaries in both trusts, including Madge, are indispensable parties.

In Talbutt v. Security Trust Co., D.C., 22 F.Supp. 241, plaintiff sought to compel a defendant trustee to restore a portion of the corpus of the trust estate claimed to have been lost because of the derelictions of the trustee. The court said:

"The plaintiff, as life tenant, does not completely own the right here sought to be adjudicated. The claim which she asserts is one which affects all interests inherent in the corpus of the estate. The interests of the life tenant and the remaindermen in respect to the corpus of the trust estate are so united and bound together that they seem clearly inseverable, and an adjudication of questions affecting the right of the trustee to be absolved from responsibility for the restoration of the corpus of the estate would necessarily have a direct effect on the interests of both, and can only be had in a proceeding to which both the life tenant and the remaindermen or such of the contingent remaindermen as are in being, are parties. Shields v. Barrow, 17 How. 130, 15 L.Ed. 158; Gregory v. Stetson, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792; Commonwealth Trust Co. [of Pittsburgh] v. Smith, 266 U.S. 152, 45 S.Ct. 26, 69 L.Ed. 219; Franz v. Buder, 8 Cir., 11 F.2d 854."

At page 242 of 22 F.Supp., the court added:

"That the joinder of the plaintiff's brothers will oust the court of jurisdiction does not authorize the court to proceed in their absence, if they are indispensable parties. Shields v. Barrow, supra. The plaintiff is not deprived of a remedy, but is merely relegated to the jurisdiction of the state court before which all persons may be brought who are interested in the subject-matter of the litigation, either legally or beneficial-

ly, and wherein an effective and just determination of the questions involved may be had which will be final and binding upon all parties in interest."

It is true that if Madge is not an indispensable party, the jurisdictional defect might be cured by dismissing the amended complaint as to her, but, since she is an indispensable party, the defect is incurable. Minnis v. Southern Pacific Co., 9 Cir., 98 F.2d 913, at page 915.

Upon a proper realignment of the parties, Madge, a citizen of Illinois, is a plaintiff, together with the named plaintiffs, who are citizens of Texas. The sole defendant is Herschel, a citizen of Illinois. Under this realignment, there is a citizen of Illinois among the plaintiffs and a citizen of Illinois is the sole defendant. This non-diversity of citizenship deprives the District Court of jurisdiction of the case. In City of Indianapolis v Chase National Bank, 314 U.S. 63, at page 69, 62 S.Ct. 15, at page 17, 86 L.Ed. 47, the court said:

"To sustain diversity jurisdiction there must exist an 'actual', Helm v. Zarecor, 222 U.S. 32, 36, 32 S.Ct. 10, 11, 56 L.Ed. 77, 'substantial', Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 81, 41 S.Ct. 39, 41, 65 L.Ed. 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435."

Stated in another way the rule is that where federal jurisdiction rests on diversity of citizenship the diversity must be complete, and to see whether it is, all parties will be aligned as plaintiffs or defendants according to their real interests, Hudson v. Newell, 5 Cir., 172 F.2d 848, at page 850, even though such an alignment may destroy the necessary diversity of citizenship and result in a loss of jurisdiction. Kentucky Natural Gas Corp. v. Duggins, 6 Cir., 165 F.2d 1011, at page 1015.

The omission from the amended complaint of any prayer for relief against Madge, who is named as a defendant thereto, is significant. It tends to show that she is properly to be treated as a plaintiff. Steele v. Culver, 211 U.S. 26, 29, 29 S.Ct. 9, 53 L.Ed. 74.

The fact that the defendant Madge is the wife of the defendant Herschel is irrelevant. Her interest in the Martha Green trust is the basis for joining her as a party. That she may have a sympathetic interest in her husband's defense in this case or that his estate upon his death might be larger due to his alleged misconduct as trustee from which increment she might benefit as his widow at his death, if she should survive him and was up until his death still his wife, does not constitute such an interest as would be determinative on the question of realignment of the parties herein.

In holding that there was diversity of citizenship in this case, the District Court relied on Venner v. Great Northern R. Co., 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666, and Hodgman v. Atlantic Refining Co., 3 Cir., 274 F. 104. These were both stockholders' suits. In the Venner case the plaintiff stockholder by his complaint alleged that both the railroad and its president were engaged in the same illegal and fraudulent conduct. The court said, 209 U.S. at page 32, 28 S.Ct. at page 329:

"They are alleged to have engaged in the same illegal and fraudulent conduct, and the injury is alleged to have been accomplished by their joint action. The plaintiff's controversy is with both, and both are rightfully and necessarily made defendants, and neither can, for jurisdictional purposes, be regarded otherwise than as a defendant."

In the instant case there is no allegation that Madge participated in any of the alleged misconduct of the trustee.

In the Hodgman case it was held that if the corporation is under a control antagonistic to the plaintiff and caused to act in a way detrimental to his rights, then a controversy arises which may be litigated in a federal court. The situation there is not analogous to that in the case at bar. See, also, 35 C.J.S., Federal Courts, § 60, p. 885.

4. Jurisdiction cannot be bestowed even by agreement of the parties, nor can want of jurisdiction because of non-diversity of citizenship be waived by the parties. Mitchell v. Maurer, 293 U.S. 237, at page 293, 55 S.Ct. 162, 79 L.Ed. 338.

In Page v. Wright, 7 Cir., 116 F.2d 449, at page 453, this court said:

"From the authorities referred to, the conclusion seems inescapable that the duty devolves upon the court 'at any time' the jurisdictional question is presented to proceed no further until that question is determined. It can not be conferred by agreement, consent or collusion of the parties, whether contained in their pleadings or otherwise, and a party can not be precluded from raising the question by any form of laches, waiver or estoppel. So, in the instant case, if the parties jointly or singly had consented or agreed to jurisdiction, it would have been of no avail in face of the fact that the question was forcibly and directly called to the attention of the court. The answer of the defendant conceding jurisdiction amounted to no more than consent, and as seen, jurisdiction can not be thus conferred irrespective of whether the consent was the result of an honest mistake or otherwise."

Therefore the contention of the plaintiffs that the mere naming of Madge in the answer filed to the amended complaint and her being named as a counter-plaintiff with Herschel in a counter-claim, in which no allegations are made in regard to her and in which she asks for no relief, amounted to a waiver of lack of jurisdiction by the court, cannot be sustained. Neither was the tardiness of the defendants in raising the question of want of jurisdiction of the court sufficient to bestow jurisdiction.

In Spencer v. Patey, 2 Cir., 243 F. 555, at page 556, the court said:

"In short, if the court has no jurisdiction, it cannot proceed, and when this appears, whether in the trial court or the appellate court, there is no alternative but to decline to entertain the cause. This being the law, we turn to the record and find a controversy of which the District Court has no jurisdiction upon the allegations or the proofs.

\* \* \* \* \* \*

"We think the judgment should be reversed with costs and the cause remanded to the District Court with instructions to dismiss the complaint without prejudice."

In Calcote v. Texas Pac. Coal & Oil Co., 157 F.2d 216, at page 218, 167 A.L.R. 413, the court said:

"In diversity cases, the question of indispensable parties is inherent in the issue of federal jurisdiction, the determination of which should never await a decision on the merits if the complaint states a cause of action. Jurisdictional questions come first in the orderly disposition of a case. A precarious jurisdiction that limits the scope of judicial decision on the merits cannot be entertained."

5. In my opinion the District Court never had jurisdiction to enter any order in this case except an order dismissing the case for want of jurisdiction at plaintiffs' costs, and it should be remanded to the District Court for that sole purpose.

However, my two colleagues disagree with me in my conclusion as to a lack of diversity of citizenship and my views thereon are not the views of the court.

**6.** The second challenge of defendants to the jurisdiction of the District Court is based upon their contention that prior exclusive jurisdiction is vested in the circuit court of Crawford county, Illinois, wherein Oscar's accounting suit is pending. Defendants admit that the circuit court proceeding was filed only in regard to the trust estate of Martha Green, but claim such proceeding, in fact, also involves the trust estate of James Green. They argue that thereby the circuit court acquired prior exclusive jurisdiction of both trust estates. The scope of that proceeding is defined by the petition for accounting which Oscar filed in that court. It refers in no way to the James trust. The scope of the proceeding was not enlarged by the acts of Herschel in filing a series of reports in the circuit court in which he combined the two trust estates and also his own personal income and expenditures. The relief prayed by Oscar in his petition was in reference to only the Martha trust. No relief beyond the scope of the petition could be granted in that proceeding. Herschel did not enlarge the scope of that case by bringing in the James trust by counterclaim or otherwise.

It appears that on October 20, 1951, Oscar filed a motion in the circuit court to dismiss his petition. While this motion has never been presented to the court for a ruling, its filing negatives any present intention by Oscar to pursue that case further.

The petition in the circuit court is on behalf of Oscar and directed against Herschel only. It is a proceeding *in personam*. The court was not asked or required to take control of the *res* of the Martha trust for any purpose whatsoever. It is not a proceeding *in rem*.

The subject matter of the District Court action is different. It involves *both* trusts. It is a proceeding *in rem*, as to the James trust, in which the court has control of the trust *res* and has before it all of the beneficiaries and remaindermen. As to the Martha trust,

plaintiffs maintain that the District Court proceeding is *in personam* on the theory that they do not ask that court to assume possession or control of that trust, but merely ask it to require Herschel to pay to Oscar the latter's just portion thereof.

It thus appears that the subject matter of the suits in the circuit court and in the District Court is not the same and that the same persons are not parties in both proceedings. The District Court is the first and only court which has acquired jurisdiction of all interested parties. The District Court is the first and only court which has acquired jurisdiction over the James trust. In addition, it has acquired jurisdiction over the Martha trust. Whether or not its jurisdiction over the Martha trust has become a proceeding *in rem*, by virtue of Herschel's submitting to that court his resignation as trustee thereof and its appointment of a successor trustee, is not necessary for us to decide.

We hold that, inasmuch as the circuit court does not have jurisdiction of all interested parties and has jurisdiction of only a part of the subject matter, the District Court's jurisdiction is not stayed and that that court has a right to proceed with the case pending before it.

**7.** Defendants also contend that the District Court has no right to entertain the present suit for accounting because it would interfere with the jurisdiction of the county court of Crawford county, wherein the estate of Martha Green is still being administered and wherein Herschel is acting as executor of her will.

County courts, in exercising probate jurisdiction, have no power in Illinois as to the management of trust estates. Brinkerhoff v. Huntley, 223 Ill.App. 591, 605. Such a court is not a court of general jurisdiction. Howard v. Swift, 356 Ill. 80, 84, 190 N.E. 102. The administration of testamentary trusts constitutes a well established branch of equity jurisdiction, and is in no sense a "probate

matter" such as is contemplated by the provisions of the Illinois constitution relating to probate courts. Frackelton v. Masters, 249 Ill. 30, 94 N.E. 124; Huston v. Weed, 242 Ill.App. 495.

We, therefore, hold that the pendency of the Martha Green estate in the county court is no bar to the present action in the District Court.

For the latter reasons and those of Judge Major, this court holds that the District Court has jurisdiction of this cause and its order of January 26, 1954 is

Affirmed.

MAJOR, Circuit Judge.

■ Chief Judge DUFFY and I agree with Judge SCHNACKENBERG in an affirmance of the order appealed from. We disagree with his view that the District Court was without jurisdiction under 28 U.S.C.A. § 1332(a). The fact is that defendants' challenge to diversity jurisdiction was the last maneuver in the case, made for the first time more than two years after the complaint was filed and then only after the court had rendered its decree requiring an accounting by the defendants. And we think it not unfair to the District Judge or counsel for the respective parties to state that apparently the issue was regarded as of such minor consequence that little consideration was given it in the District Court, and it is evident from the briefs filed in this court that counsel regarded it as of minor importance. In defendants' brief, it is the last point argued. Defendants blow hot and cold on the issue as to the real parties in interest. As late as September 10, 1953, in their amended motion to dismiss the complaint on the ground that the District Court should not proceed because the State Court had acquired jurisdiction of the same cause of action and all necessary parties, it was alleged, " * * * they [referring to all parties other than Oscar and Herschel] are not real parties in interest and are not necessary to the final

determination of the issues involved at the present time * * *." And in the same motion Oscar was alleged as "the real party Plaintiff and real party in interest." Contrary to that position, defendants now assert in rather feeble fashion that all the parties, including Alice and Madge, are indispensable.

■ Judge SCHNACKENBERG has made a fair statement of the facts, which we shall not repeat. In our judgment, Madge is not an indispensable party but, assuming *arguendo* that she is, both reason and authority make it plain that she should not be realigned as a party plaintiff. It is asserted that Madge is in the same position as Alice as to indispensability. It is pertinent to point out, however, that when Alice sought leave to intervene, she did so under the provisions of Rule 19(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., upon the express representation that she was not an indispensable party. It also may be pertinent to note that while the contingent interest of both Alice and Madge stems from the codicil to the will of Martha Green, they have no joint interest or a contingent interest in a joint fund. The interest of Madge is only in that portion of the trust income payable to her husband, Herschel, and is contingent upon his prior death without children (they have no children). On the other hand, the interest of Alice is only in that portion of the income payable to her husband, Oscar, and is contingent upon his prior death without children (they have two children). Therefore, Madge has no interest contingent or otherwise in the income payable to Oscar, and Alice has no interest contingent or otherwise in the income payable to Herschel.

As shown by Judge SCHNACKENBERG, the principal relief sought by plaintiffs was an accounting for the money alleged to have been wrongfully converted by Herschel as trustee, both from the James and the Martha trusts, and for his removal as trustee and the appointment of a successor-trustee. A personal judgment was sought against Herschel in

favor of Oscar for the latter's share of the earned income of the two trusts and for a restoration of corpus. It is evident that none of the contingent beneficiaries had an interest in any recovery obtained by Oscar. The most that can be said is that Madge, as well as Alice, had an interest in requiring restoration to the corpus of the Martha trust of any money or property wrongfully converted therefrom by Herschel, only on the basis that the increased worth of that trust would provide more income to them when and if the contingency arose by which they were to receive income, that is, the death of their respective husbands.

It would unduly prolong this discussion to cite or discuss the many cases which have been called to our attention. It is a fundamental principle that a party is not indispensable where a decree can be rendered between the parties actually before the court without prejudicially, adversely or injuriously affecting an absent party. In Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, 70, 57 S.Ct. 51, 53, 81 L.Ed. 42, the court stated:

"The rule is that if the merits of the cause may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done; and a court of equity will strain hard to reach that result. [Citing cases.]"

In Waterman v. Canal-Louisiana Bank & Trust Co., Executor, 215 U.S. 33, 49, 30 S.Ct. 10, 14, 54 L.Ed. 80, the court stated:

"The relation of an indispensable party to the suit must be such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of such absent party."

In Cather v. Ocean Accident & Guaranty Corp., D.C., 94 F.Supp. 511, 515, the court stated:

"Generally, a reliable test of one's indispensability as a party to an action is whether he will be adversely or prejudicially affected by a proper and complete judgment in it. If he will be, he is indispensable. [Citing cases.] And that consequence is not obviated by the circumstance that in his absence the judgment will not be technically binding upon him."

Many other courts have announced the same rule. See Horn v. Lockhart, 17 Wall. 570, 84 U.S. 570, 579, 21 L.Ed. 657; Seeley v. Cornell, 74 F.2d 353, 355; State of Washington v. United States, 9 Cir., 87 F.2d 421, 427, and Chance v. Buxton, 5 Cir., 170 F.2d 187, 188.

Baird v. People's Bank & Trust Co., 3 Cir., 120 F.2d 1001, 136 A.L.R. 693, the case most strongly relied upon by Judge SCHNACKENBERG, recognizes this principle, as is shown by his quote. As heretofore noted, it seems too plain for argument that neither Madge nor Alice could have any interest in any recovery obtained by Oscar, the primary purpose of the suit, it is equally plain that they have no interest in any restoration which Herschel is required to make to the James trust. While they have a remote contingent interest in the Martha trust, it appears that they cannot be adversely or prejudicially affected by any restoration which Herschel is required to make to that trust. On that score their contingent interest would be enhanced, not injured.

In re National Realty Trust, 7 Cir., 167 F.2d 440, relied upon and quoted from by Judge SCHNACKENBERG, furnishes little if any support to his position. There we held that certificate holders were entitled to notice of an election of a trustee in a common law trust. We thought their situation was comparable to the right of directors of a corporation to notice for the election of corporate officials. Even so, we did not hold that they were indispensable parties, but only necessary. The proceeding was under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., where the Federal Rules of Civil Procedure are not controlling. Rule 81(a) More than that, this court has twice held that the indispensability of parties must

be determined by Federal and not State rules. De Korwin v. First National Bank of Chicago, 7 Cir., 156 F.2d 860, and Cowling v. Deep Vein Coal Co., Inc., 7 Cir., 183 F.2d 652, 655. And in this connection see Rule 19(a) and (b).

Neither do we think that the effort to remove Herschel as trustee of the two estates made Madge (or any other contingent beneficiary) an indispensable party. In Wesson v. Crain, 8 Cir., 165 F.2d 6, 9, the court stated:

"We agree with the Supreme Court of Massachusetts that one of several beneficiaries may have a trustee removed if he has so misconducted himself that he ought to be removed."

In Sadler v. Sadler, 9 Cir., 167 F.2d 1, 2, the court stated:

"The interests of the beneficiaries are not joint. That one or more beneficiaries may have a trust declared in his or their favor as well as in favor of persons not parties does not make the absent persons indispensable or even necessary parties."

As heretofore noted, the interest of the beneficiaries in the instant situation is not joint. Moreover, any interest which Alice might have had regarding the removal of Herschel as trustee has been eliminated by her own voluntary act in entering a written consent to Herschel's resignation as trustee on October 27, 1952, with an agreement for the appointment of a successor-trustee.

■ Alice not being an indispensable party, the complaint might be dismissed as to her Minnis v. Southern Pacific Co., 9 Cir., 98 F.2d 913, 915, or her presence in the suit need not be considered, Salem Trust Co. v. Manufacturers' Finance Co., 246 U.S. 182, 190, 44 S.Ct. 266, 68 L.Ed. 628.

■ Assuming, however, contrary to what we think, that Madge is an indispensable party, we do not believe that she should be realigned as a plaintiff. We think that on this phase of the situation Judge SCHNACKENBERG has placed too much reliance upon what appears only from the complaint (with the codicil attached to Martha's will) and not enough to subsequent pleadings and proceedings in the case, as well as the attitude and conduct of Madge toward the controversy. Steele v. Culver, 211 U.S. 26, 29, 29 S.Ct. 9, 53 L.Ed. 74, is cited in support of the statement that it is significant that no relief was prayed against Madge. That is true, of course, but it is of far greater significance that Madge by answer joined her husband, Herschel, in denying each and every alleged act of wrongdoing on his part, as alleged in the complaint, and prayed for its dismissal. Thus we have a situation where the plaintiffs have stated and seek to go forward with a cause of action against Herschel, while Madge has joined Herschel in an effort to erect an insurmountable blockade and to defeat the action at its threshold. More than that, Madge joined Herschel in a counterclaim charging Oscar with wrongdoing and seeking relief against him. Furthermore, in an amended motion to dismiss and abate proceedings, filed September 10, 1953, Madge joined her husband in a request that the successor-trustee theretofore appointed by the court with the express approval of both Herschel and Madge be discharged and that such trustee be enjoined from taking any further action in either of the testamentary trusts.

As a matter of common sense, it appears well near preposterous to think that Madge, with her attitude and conduct toward the litigation, should be aligned as a plaintiff. Aligned for what purpose? Such action could not be expected to do other than impair, certainly not aid, an adjudication of the rights and interests of the parties. Its realistic effect would be like tossing a new-born lamb into the lap of a tiger for safekeeping.

We need not burden our views by the citation or discussion of more than a few of the many cases bearing upon the issue of realignment of parties. We

make bold to state, however, that there is no case which has required the realignment of a party under the circumstances before us. In Venner v. Great Northern R. Co., 209 U.S. 24, 31, 28 S.Ct. 328, 329, 52 L.Ed. 666, the court stated that parties should be realigned "upon the side where their interest in and attitude to the controversy really place them." In Hamer v. New York Railways Co., 244 U.S. 266, 37 S.Ct. 511, 61 L.Ed. 1125, the court held that a defendant should be realigned as plaintiff because such defendant by answer admitted the allegations of the complaint and joined in the prayer for relief. Thus the court treated as determinative the defendant's attitude toward the litigation. In Sutton v. English, 246 U.S. 199, at page 204, 38 S.Ct. 254, at page 256, 62 L.Ed. 664, the court reversed the District Court which had realigned as plaintiff a party named as defendant. In doing so, it stated:

"Therefore she was properly made a party defendant, that being her attitude towards the actual and substantial controversy."

In City of Indianapolis v. Chase National Bank, Trustee, 314 U.S. 63, at page 69, 62 S.Ct. 15, at page 17, 86 L.Ed. 47, which is perhaps as strong a case in favor of realignment as can be found. the court stated:

"Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute'."

It is not open to question but that Madge joined her husband, Herschel, on his side of the controversy and has assumed an uncompromising attitude of hostility toward the plaintiffs and their maintenance of the suit. Under such circumstances, this court should permit her to remain on the side where she and her counsel for more than two years thought she belonged.