BOURDIEU *v.* PACIFIC WESTERN OIL CO. ET AL.

No. 2. Argued October 12, 1936.—Decided November 9, 1936.

*Mr. Archer B. Dorman,* with whom *Messrs. Jefferson P. Chandler* and *Howard W. Wright* were on the brief, for petitioner.

*Mr. Herbert W. Clark,* with whom *Messrs. Felix T. Smith, George W. Nilsson,* and *Herman Phleger* were on the brief, for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit brought by peitioner against respondents to have impressed in his favor a trust in respect of a portion of a lease, executed by the United States, of oil and gas lands in the State of California.

The bill alleges that petitioner, since March, 1919, has been the owner and in possession of certain legal subdivisions of section 30, Township 21 South, Range 17 East, Mount Diablo Meridian, Fresno County, California, embracing 322.89 acres; that by reason of such ownership, he has been at all times since February 25, 1920, entitled to a preference right for a permit to prospect on such land for oil and minerals and, in case of discovery thereon, to a lease under the provisions of § 20 of the Leasing Act of February 25, 1920, 41 Stat. 437, 445, which provides— "In the case of lands bona fide entered as agricultural, and not withdrawn or classified as mineral at the time of entry, . . . the entryman or patentee, or assigns, . . . if

the entry has been patented with the mineral right reserved, shall be entitled to a preference right to a permit and to a lease, as herein provided, in case of discovery; . . ." The bill further alleges that petitioner made a *bona fide* entry of the land in question as agricultural; that the land was not withdrawn or classified as mineral at the time of his entry; that the entry was patented to him with a reservation of oil and gas to the United States under the provisions of the Act of July 17, 1914, 38 Stat. 509. In May, 1921, it is alleged, one of the defendants illegally and wrongfully and with knowledge of petitioner's rights, secured a purported permit to prospect for oil and gas on a large tract, which included the land described; that the issue of the permit was in violation of petitioner's preference right and operated to deny his right to procure a United States oil-and-gas-prospecting permit to prospect thereon and to a lease in case of discovery, for the reason that no personal notice, as required by regulations of the Interior Department and the provisions of the Leasing Act, or notice of any kind, was given to petitioner, who had no notice of the issue of such purported permit until about the month of July, 1928. The bill further alleges that Pacific Western Oil Company acquired from the original permittee all his right, title and interest in and to the permit, and that by reason thereof a lease was executed by the Secretary of the Interior to that company, granting the exclusive right to drill and explore for oil and minerals in said land; that such company is now the legal owner of the lease, and wrongfully holds it in violation of petitioner's prior and superior equitable rights; and that the other respondents named have or claim, adversely to petitioner, some interest in the lands in question and the lease covering the same.

An amendment to the bill, made by stipulation of the parties, alleges that petitioner's entry was made on March

6, 1919, and patent issued to him on October 7, 1925. Copies of the entry, with Land Office endorsements, and of the patent are attached and made part of the bill. The entry is in usual form and concludes, over the signature of petitioner, with the words, "Subject to provisions and reservations and limitations of Act of July 17, 1914," and was stamped by the Land Office, "Application made in accordance with and subject to the provisions and reservations of the Act of July 17, 1914."

The patent expressly excepts and reserves to the United States all the oil and gas in the lands patented, and to it, or persons authorized by it, the right to prospect for, mine and remove therefrom such oil and gas upon compliance with the conditions and subject to the provisions and limitations of the Act of July 17, 1914. Section 1 of that act provides that lands withdrawn or classified as phosphate, nitrate, potash, oil, gas, or asphaltic minerals, etc., shall be subject to entry, if otherwise available, under the nonmineral land laws, when made with a view of obtaining title "with a reservation to the United States of the deposits on account of which the lands were withdrawn or classified . . . together with the right to prospect for, mine, and remove the same; . . . *Provided,* That all applications to locate, select, enter, or purchase under this section shall state that the same are made in accordance with and subject to the provisions and reservations of this Act." C. 142, 38 Stat. 509.

There was also attached to the stipulation a copy of an order of withdrawal made by the President December 30, 1910, as follows:

"It is hereby ordered that the following described lands be, and the same are hereby withdrawn from settlement, location, sale or entry, and reserved for classification and in aid of legislation affecting the use and disposal of petroleum lands belonging to the United States, subject to all of the provisions, limitations, exceptions, and con-

ditions contained in the Act of Congress entitled 'An Act to authorize the President of the United States to make withdrawals of public lands in certain cases,' approved June 25, 1910: . . ."
Among the lands described is the land here in question.

In the district court, respondents moved to dismiss the bill on the grounds, first, that it did not state facts sufficient to constitute a valid cause of action in equity or at law against them or either of them; second, that the United States was an indispensable party to a complete determination of the suit; third, that petitioner was guilty of laches and his cause of complaint was stale. The district court denied the motion without prejudice to a renewal later and, after answer by respondents, proceeded to a hearing on the merits. After such hearing it held that petitioner was not entitled to a preference right nor to a lease of the lands in question; that respondents Kettleman Oil Corporation and Pacific Western Oil Company were the owners in equal proportions of the oil and gas lease executed by the Secretary of the Interior to the latter company; and that petitioner be denied all relief.

An appeal followed to the court of appeals. That court, without passing upon the merits, held that the United States was an indispensable party, which could not be sued, for lack of its consent, for which reason that court and the district court were without jurisdiction; and upon that ground it dismissed the suit. 80 F. (2d) 774

The case presented by the bill comes to this: Petitioner asserts a preference right to prospect for oil and other minerals and, if successful, to obtain a lease under § 20 of the Leasing Act of 1920, in virtue of his homestead entry in 1919 and patent in 1925. It appears, however, from the allegations of his bill and the exhibits attached that the entry was subject to the provisions of the Act of July 17, 1914, among which is the limitation reserving

to the United States all oil and minerals in the lands entered on account of which the lands so entered had been withdrawn or classified "together with the right to prospect for, mine, and remove the same." The lands here in question when entered were within the terms of the Executive order of 1910, by which order they were "withdrawn from settlement, location, sale .or entry, and reserved for classification . . ." Whether a "classification" of the lands was effected by the order we need not determine since it is clear that they were "withdrawn" by the definite and unambiguous words of the order; and, as shown by the bill, it is enough to exclude complainant from the privileges of the Act of 1920 that the lands were either withdrawn *or* classified. It follows that the motion to dismiss on the first ground stated was well taken and should have been granted and the case ended without a hearing, which the district court unnecessarily ordered—evidently out of abundance of caution.

Since, plainly, the bill of complaint did not state a cause of action, the United States could have no interest in the case requiring its presence as a party; and the inquiry as to whether it was an indispensable party, which would have been entirely proper under a good bill, was here wholly gratuitous.

The rule is that if the merits of the cause may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done; and a court of equity will strain hard to reach that result. *West* v. *Randall,* 2 Mason 181, 196 (opinion by Mr. Justice Story); *Cole Silver Mining Co.* v. *Virginia & G. H. W. Co.,* 1 Sawyer 685, 689 (opinion by Mr. Justice Field); Story's Equity Pleadings, 8th ed., §§ 77, 96. And see *Russell* v. *Clarke's Executors,* 7 Cranch 69, 98; *Elmendorf* v. *Taylor,* 10 Wheat. 152, 167–168. *Cf.* Equity Rule 39.

We refer to the rule established by these authorities because it illustrates the diligence with which courts of equity will seek a way to adjudicate the merits of a case in the absence of interested parties that cannot be brought in. While the rule as stated is intended for the benefit of a plaintiff whose bill sets forth a cause of action which he should, if possible, be given an opportunity to prove, the principle it embodies applies with equal, if not greater, reason to a case like this where the bill entirely fails to do so. In such a case, the obvious reply of the court to a suggestion that other parties are indispensable is that—since the bill states no cause of action against anyone, the rights of absent parties are in no way threatened by it, and to enter upon a consideration of the question of their indispensability would be a vain waste of time.

If it be urged that the United States is an indispensable party and, hence, that the court may not proceed even to inquire whether the bill states a cause of action, the answer is that good sense suggests precisely the contrary. For a mere inspection of the bill at once discloses that it states no cause of action and, therefore, the United States is not an indispensable party, since it cannot be prejudiced by, and has no interest requiring protection in, a proceeding which at the threshold is seen to be without substance. Nothing is to be gained by an inquiry into the status of absent parties when it is certain upon the face of complainant's bill that in no event will he be entitled to a decree in his favor.

We are of opinion that the court of appeals should have disposed of the case in accordance with that view; and that the district court should have dismissed the bill upon the first ground stated in respondent's motion. Upon the question whether, upon a good bill, the United States would be an indispensable party, we deem it unnecessary to express an opinion.

The decrees of both courts below must, therefore, be reversed, and the cause remanded to the district court with directions to enter a decree in accordance with this opinion.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.