**UNITED STATES et al. v. McINTIRE et al.**
**FLATHEAD IRR. DIST. v. SAME.**
**No. 8797.**

Circuit Court of Appeals, Ninth Circuit.
Jan. 31, 1939

Elmer E. Hershey, of Missoula, Mont., for appellee Agnes McIntire.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

From a decree adjudicating that appellees were entitled to divert waters from Mud Creek, situated in Montana on the Flathead Indian Reservation, and enjoining appellants from interfering with such right in any way whatever, this appeal is taken.

On July 16, 1855, one Stevens, on behalf of the United States, entered into a treaty with the Flathead, Kootenay and Upper Pend d'Oreilles Indian tribes, constituting the Flathead Nation. The treaty was ratified on March 8, 1859 and proclaimed on April 18, 1859, 12 Stat. 975. A large body of land was ceded to the United States by Article 1. Article 2 provided in part:

"There is, however, reserved from the lands above ceded, for the use and occupation of the said confederated tribes, and as a general Indian reservation upon which may be placed other friendly tribes * * * the tract of land included within the following boundaries * * *

"All which tract shall be set apart, and, so far as necessary, surveyed and marked out for the exclusive use and benefit of said confederated tribes as an Indian reservation. * * *"

About 1891, Michel Pablo, an Indian, took possession of a large tract of land within the area reserved by the treaty and constructed a ditch from Mud Creek in Montana. He fenced the lands, carried water from Mud Creek to them, and used the water for irrigation and domestic purposes.

The Act of April 23, 1904 (33 Stat. 302) directed the Secretary of the Interior to cause the lands within the area reserved by the treaty to be surveyed, allotted and the remainder to be opened for settlement, it being provided in Section 9 that "said lands shall be opened to settlement and entry by proclamation of the President". By Section 14, it was provided that one-half of the proceeds from sale of lands was to be expended "for the benefit of the said Indians * * * in the construction of irrigation ditches * * * to aid the Indians in farming and stock raising" and that the remaining half was "to be paid to the

John B. Tansil, U. S. Atty., of Butte, Mont., Kenneth R. L. Simmons, Dist. Counsel, U. S. Indian Immigration Service, Dept. of Interior, of Billings, Mont., and Thomas E. Harris,. Sp. Atty., Dept. of Justice, of Washington, D. C., for appellants United States and others.

Walter L. Pope, Russell E. Smith, and Allen K. Smith, all of Missoula, Mont., for appellant Flathead Irr. Dist.

said Indians * * * or expended on their account, as they may elect." Section 16 of the Act provided that it was the intention of the Act "that the United States shall act as trustee for said Indians to dispose of said lands and to expend and pay over the proceeds received from the sale thereof only as received".

The Act of June 21, 1906 (34 Stat. 325, 354, 355), making appropriations for the Indian Department, amended the Act of April 23, 1904 by making additions thereto, including Section 19, which provided:

"That nothing in this Act shall be construed to deprive any of said Indians, or said persons or corporations to whom the use of land is granted by the Act, of the use of water appropriated and used by them for the necessary irrigation of their lands or for domestic use or any ditches, dams, flumes, reservoirs constructed and used by them in the appropriation and use of said water."

On April 26, 1907, the Commissioner of Indian Affairs requested the Director of the Reclamation Service to make an investigation and a survey of the lands in the Reservation. The investigation was commenced in July, 1907, and the engineer in charge testified that his "instructions were to find the best way to use all of the water available on that project without regard to any other rights that might have existed". The engineer made his report and survey on November 12, 1907.

On November 12, 1907, a notice of appropriation of 560 inches of the waters of Mud Creek was made by Michel Pablo, his wife, children and grand-nieces. It was recorded in Montana on November 14, 1907.

The Act of May 29, 1908 (35 Stat. 444, 448) amended Sections 9 and 14 of the Act of April 23, 1904. Section 9 as amended provided in part: "The land irrigable under the systems herein provided, which has been allotted to Indians in severalty, shall be deemed to have a right to so much water as may be required to irrigate such lands without cost to the Indians for construction of such irrigation systems. * * * All lands allotted to Indians shall bear their pro rata share of the cost of the operation and maintenance of the system under which they lie". Section 14 as amended provided that the Secretary of the Interior might expend from the proceeds received from the sale of lands for the construction of irrigation systems so much

as he might deem advisable; that one-half of the remainder was to be expended for the benefit of the Indians for various things; that the remaining half was to be paid to the Indians semi-annually, share and share alike; and "That the Secretary of the Interior may withhold from any Indian a sufficient amount of his pro rata share to pay any charge assessed against land held in trust for him for operation and maintenance of irrigation system."

As a part of the Flathead Irrigation System, the Pablo Feeder Canal was built about 1914. The canal crosses Mud Creek above the Pablo Ditch. The United States has made various improvements in the project, the total cost to June 30, 1936, being $7,499,105.85. Flathead Irrigation District, a Montana corporation, hereinafter called the district, will upon repayment to the United States of the project's cost, become the owner of it.

Appellees are owners of land originally taken possession of by Michel Pablo. Appellee McIntire brought this suit against the United States, Ickes, as Secretary of the Interior, Gerharz, the Project Engineer, the district, and some 35 other defendants. The second amended bill, hereinafter called the bill, alleged that the United States claimed an interest in the waters of Mud Creek, had "damned up" the creek, and had deprived appellee McIntire of "the full use of the waters to which she is entitled"; and that appellee McIntire and the United States "are tenants in common or joint tenants in the use of said water". Appellants Ickes and Gerharz were alleged to be the officers in charge of the project. It was alleged that all appellants claimed that appellee McIntire had no water rights to Mud Creek and that they had the right to prevent her from using such water. It was further alleged that appellees Pablo and Sterling claimed that the appropriation of the waters of Mud Creek by Michel Pablo was made also for lands now owned by them. Finally, it was alleged that the district and the 35 defendants claimed some rights to the water at one time. Appellee McIntire prayed that her rights and those of the United States to the waters of Mud Creek be adjudicated between them, that her rights be partitioned, and that all defendants be restrained from interfering with her rights.

The United States appeared specially alleging that the court had no jurisdiction over it because it had not consented to be

sued. Gerharz entered a special appearance alleging that the suit was one essentially against the United States, which had not consented to be sued, and moved to dismiss the bill on the ground that the bill failed to state facts sufficient to constitute a cause of suit, which latter ground was also the basis of motions to dismiss filed by the district and 19 other defendants. Apparently all of the motions were denied, but no order disposing of any of them appears in the record. We therefore assume that the decree denied the motions.

It is here unnecessary to relate the contents of the various answers. In the main, the issues were: (1) whether the bill stated a cause of suit; (2) whether or not the suit should be dismissed because the United States was an indispensable party to the suit, and had not consented to be sued; (3) whether or not the lands within the reservation were withdrawn from all forms of entry, and therefore no water rights could be acquired by appropriation; (4) whether or not Michel Pablo had appropriated all the water claimed by appellees; and (5) if so, whether the United States had acquired most of the appropriation by prescription.

The trial court found that the United States and appellees "are tenants in common, or joint tenants in the use of said waters of Mud Creek" and that the lands of appellees required "one inch to the acre for the proper irrigation thereof". Decree was entered to that effect, and restraining Gerharz from interfering with appellee's rights so adjudicated. The United States, Ickes, Gerharz, the district, and 19 other defendants have appealed.

█ It is contended here that the suit must be dismissed because the United States is an indispensable party and has not consented to be sued. We believe "a mere inspection of the bill at once discloses that it states no cause of action" and therefore "The United States is not an indispensable party, since it cannot be prejudiced by, and has no interest requiring protection in, a proceeding which at the threshold is seen to be without substance." Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, 71, 57 S.Ct. 51, 53, 81 L.Ed. 42.

█ The question as to whether or not the United States has consented to the suit, however, still remains. Appellees contend that consent is given by 28 U.S.C.A. § 41 (25), which provides: "The district courts shall have original jurisdiction as follows:

* * * Of suits in equity brought by any tenant in common or joint tenant for the partition of lands in cases where the United States is one of such tenants in common or joint tenants." Assuming, without deciding, that the word "lands" includes water rights, we think the statute has no application here. The suit is essentially one to determine the validity of the claimed water right, which if valid, might present a question of priority and extent, in that there would then be two rights—one in the United States, and one in appellees McIntire, Pablo and Sterling. However there would be no question as to whether or not the United States owned a part of the latter right, and there is none here. The right asserted is one which the appellees McIntire, Pablo and Sterling claim to own entirely. As such the United States and the named appellees are neither joint tenants nor tenants in common. There being no consent by Congress to the suit, the bill must be dismissed as to the United States.

█ The allegations of facts required to be contained in the bill, are those "showing (1) that the court has jurisdiction; (2) ownership of a right by complainant; (3) violation of that right by defendant; and (4) that equitable relief should be granted." United States v. Humboldt Lovelock Irr. Light & P. Co., 9 Cir., 97 F.2d 38, 42. Of those elements, it is contended that the bill does not disclose ownership of any right by appellees McIntire, Pablo and Sterling. Decision of that question determines the controversy.

Appellants contend that since the lands now owned by appellees were withdrawn, no one could obtain any water rights to Mud Creek. It is clear from the allegations of the bill that the lands now owned by appellees were within the area mentioned in the treaty as being reserved to the Indians.

█ The waters of Mud Creek were impliedly reserved by the treaty to the Indians. Winters v. United States, 207 U.S. 564, 577, 28 S.Ct. 207, 52 L.Ed. 340; United States v. Powers, 9 Cir., 94 F.2d 783, 785, and cases cited. The United States became a trustee, holding the legal title to the land and waters for the benefit of the Indians. Minnesota v. Hitchcock, 185 U.S. 373, 387, 22 S.Ct. 650, 46 L.Ed. 954. Being reserved no title to the waters could be acquired by anyone except as specified by Congress. The only provision re-

654

garding water rights pointed out is found in the Act of May 29, 1908, § 9, 35 Stat. 448, 449, which provided that "The land irrigable under the systems herein provided, which has been allotted to Indians in severalty, shall be deemed to have a right to so much water as may be required to irrigate such lands * * *." Thus water rights were allocated to each parcel of the irrigable land in an amount "as may be required to irrigate such lands". In the event that the supply of water was insufficient to furnish that amount, then the provision of the general allotment act requiring "just and equal distribution" of the water (25 U.S.C.A. § 381) would be applicable. If appellees had been arbitrarily deprived of their "just and equal distribution" perhaps the administrative officers of the project would be compelled to make proper distribution. Here, however, appellees claim a right wholly separate and distinct from whatever allocation the Secretary of the Interior might make.

Appellees seem to contend that Michel Pablo acquired by prior appropriation the rights in question by local statute or custom, and that the Act of. July 26, 1866, 43 U.S.C.A. § 661, requires recognition of those rights. That statute, however, applies only to "public" lands. Winters v. United States, 9 Cir., 143 F. 740, 747, affirmed 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340. Lands which are reserved are severed from the public domain. Leavenworth, etc., R. R. Co. v. United States, 92 U.S. 733, 745, 23 L.Ed. 634; United States v. Minnesota, 270 U.S. 181, 206, 46 S.Ct. 298, 70 L.Ed. 539. The statute mentioned, therefore, does not, we think, apply here. Likewise, the Montana statutes regarding water rights are not applicable, because Congress at no time has made such statutes controlling in the reservation. In fact, the Montana enabling act specifically provided that Indian lands, within the limits of the state, "shall remain under the absolute jurisdiction and control of the Congress of the United States". 25 Stat. 676, § 4.

Appellees further rely on § 19 of the Act of June 21, 1906 as indicating that Congress recognized that waters might be appropriated. We think it is clear that the section relied on granted nothing, but was in effect a savings clause. At the time of its enactment, Winters v. United States, supra, had not been finally decided, and the question as to whether waters for Indians had been reserved by the treaties was debatable. The purpose of the section was to save any valid rights, if the question was answered in the negative.

Finally, appellees mention that the Secretary of the Interior had allocated certain water rights which, it is said, had been appropriated prior to 1909. Whether or not the Secretary of the Interior acted erroneously in those cases is a question which is not before us.

We think the bill discloses that Michel Pablo obtained no valid water right.

Reversed and remanded with directions to dismiss the bill as against the United States on the ground that it has not consented to the suit, and as against the other defendants on the ground that the bill failed to state facts sufficient to constitute a cause of suit.