## MacBRYDE v. BURNETT et al.

### No. 1137.

District Court, D. Maryland.

Oct. 27, 1941.

James Morfit Mullen and R. Contee Rose, both of Baltimore, Md., for plaintiff.

Hilary W. Gans and Joseph T. Brennan, both of Baltimore, Md., for defendants.

CHESNUT, District Judge.

After hearing full oral argument in this case, and consideration of the briefs submitted, and further examination of the proceedings, I have concluded that the motion to dismiss must be overruled. It is therefore so ordered.

The motion to dismiss, as re-filed to the complaint as amended, presents as the only point the absence from the record of an alleged indispensable party. The jurisdiction of the court is based on diverse citizenship. The plaintiff is a citizen of Virginia, and the defendants named are citizens of Maryland, and of States other than Virginia. The plaintiff's claim is based on an assignment (through probate proceedings in Virginia) of the original claim of one Le Roy Parker, a legatee under the will of Mary Donaldson, through the exercise of an appointment in the will of Sarah J. Parker. The alleged indispensable party is Mary D. Winder, a citizen of Maryland, who is likewise a legatee under the will of Mary Donaldson through appointment by the will of Sarah J. Parker. The principal defendant, Paul M. Burnett, was an administrator d.b.n.c.t.a. of Mary Donaldson, and was also the executor under the will of Sarah J. Parker. The object of the suit is to recover the plaintiff's legacy from the defendant Burnett much enhanced, according to the allegations of the complaint, by successive investments and reinvestments by the defendant of moneys constituting the original legacy. The wills of both Mary Donaldson and Sarah J. Parker were probated and the estates administered in the Orphans Court of Baltimore City.

The devolution of the plaintiff's title is as follows: Mary Donaldson's will bequeathed a pecuniary legacy of $10,000 to Sarah J. Parker for the latter's life, with remainder to the latter's brothers and sister, but with power of appointment given to the life tenant to designate the share or proportion which the brothers and sister should take. In the settlement of the Donaldson estate the amount available for the legacy was determined to be only $7,739.65. According to the complaint this fund, after being finally distributed by the administration account to Sarah J. Parker as life tenant, was in fact retained by the defendant and invested by him in certain stocks which thereafter in 1928 he re-sold at a very substantial profit realizing therefor about $34,000. This investment and re-sale is stated to have been by orders of the Orphans Court of Baltimore City *after* the distribution of the estate and at a time when apparently the jurisdiction of the court with respect to the fund had ceased. The complaint further alleges, however, that the defendant mingled the $34,000

with his own funds and made other investments in consequence of which it is alleged that the ultimate proceeds of re-investment have still further very greatly enhanced the value of the original legacy.

By the will of Sarah J. Parker the power of appointment given to her by Mary Donaldson was exercised by the appointment of her two brothers and one sister to take the principal of the $10,000 legacy "in equal parts". The two brothers were LeRoy Parker and Robert B. Parker, and the sister was Mary D. Winder. The will of Mary Donaldson was probated on May 27, 1920. The will of Sarah J. Parker, in which the power of appointment was exercised, was dated March 23, 1927, and was probated November 15, 1940. One of the appointees, Robert B. Parker, predeceased Sarah J. Parker, having died August 2, 1940, and Sarah J. Parker died on November 12, 1940. The legal representatives of Robert B. Parker are nonresidents of Maryland but have entered their appearance in this case.

LeRoy Parker died in January 1941. His will was probated in Virginia and by administration of the estate there it is alleged that the plaintiff, MacBryde, has legally succeeded to his share of the original legacy. Mary D. Winder, the third appointee, is a citizen of Maryland but has not joined in the case, it being stated in the bill that failure to join her as a party was the deliberate choice of the plaintiff in order not to destroy the jurisdiction of the court, as, if she were joined as a plaintiff, there would not be such complete diversity of citizenship as is required under federal court decisions; and it is thought that if she were joined as a defendant she should be re-aligned as a plaintiff for purposes of jurisdiction.

■ It is the contention of the defendant that Mary D. Winder is an *indispensable party*. The well recognized test as to whether an omitted party is indispensable is whether the adjudication of the case would necessarily result in injustice to the absent party. If the relief prayed, or some of it, can be fairly granted to the plaintiff without injustice to the absent party, then the latter is not indispensable. Moore's Fed.Practice, Vol. 2, p. 2144, et seq; F.R.C.P. Rule 19; People of State of California v. Southern Pacific Co., 157 U.S. 229, 15 S.Ct. 591, 39 L.Ed. 683; Commercial Casualty Ins. Co. v. Lawhead, 4 Cir., 62 F.2d 928, 931; Atlantic Coast Line R. Co. v. Baltimore and O. R. Co., D.C. Md., 12 F.Supp. 711, 719.

■ The question presented has required close analysis, but after reading the applicable decisions, I have concluded that Mrs. Winder is not an indispensable party. The nature of the plaintiff's claim is for the re-invested proceeds of an *equal share* of the original legacy. The claim is one *in severalty* and not a joint claim. If the original legacy was still represented by cash in the hands of the defendant it would seemingly clearly be his duty to turn over the equal proportionate share thereof to the plaintiff. I think the case is within the principle of Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260. There the plaintiff, a citizen of Virginia, sued an administrator and the sureties on his bond, all citizens of Missouri, to obtain her distributive share in the estate of her brother. It was objected to the jurisdiction that the other nearest of kin of the decedent, presumably citizens of Missouri, were not made co-plaintiffs. The court nevertheless sustained the jurisdiction in a fully reasoned opinion by Mr. Justice Davis. See, also, Waterman v. The Canal-Louisiana Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80. The same principles were again fully stated by Circuit Judge Learned Hand in the case of Roos v. Texas Co., 2 Cir., 23 F.2d 171 (a case much relied on by defendant's counsel) although the jurisdiction there was denied by reason of the legal effect of a particular contractual provision whereby the share of the plaintiff in the contested amount was inextricably interwoven with that of absent parties. The latter case is distinguishable from the present case.

The principal complication which is thought to exist here, and to make Mrs. Winder an indispensable party, arises from the fact of the death of Robert B. Parker, one of the brothers and appointees under the will of Sarah J. Parker, before her death. In consequence of this fact the plaintiff's contention is that he is entitled to *one-half* of the whole of the original legacy as augmented by subsequent investments by the defendant. The representatives of Robert B. Parker, all citizens of States other than Virginia, have appeared in the case. Their interest is obviously, in one aspect of the case, similar to that of the plaintiff against the defendant; but in another aspect, hostile to the plaintiff. But whether these representatives should be

aligned as plaintiffs or defendants is immaterial on the issue of diversity of citizenship.

The ultimate question is whether all or some part of the relief prayed in the bill can be given to the plaintiff without injustice to or impairing the rights of Mrs. Winder. The prayers of the plaintiff are for discovery by the defendant of his financial transactions relating to the original legacy, that the present value thereof be brought into court, that if necessary a receiver be appointed for the fund or an injunction issued to preserve it, and that the defendant be required to account for and pay over to the plaintiff his proper share of the proceeds of reinvestment of the original legacy after determining whether that share consists of one-half or one-third.

If it should be determined that the plaintiff is entitled to one-half of the fund, it is difficult to see how Mrs. Winder could in any way be prejudiced by a judgment or decree awarding the plaintiff that amount, because the judgment would also necessarily determine that the representatives of Robert B. Parker have no interest in the fund, and they would be bound by the judgment because they are parties to the case. It is true, however, that if it should be determined that the plaintiff is entitled to only one-third of the fund, that determination would necessarily involve the finding that the representatives of Robert B. Parker will also be entitled to one-third of the fund, and in that event Mrs. Winder might be prejudiced if in a separate suit against the defendant it should be held that she was entitled to one-half of the fund, in the further event that the defendant would not be able to pay such a judgment in her favor. But this possibility does not, on the authorities, make Mrs. Winder an indispensable party in this litigation, as no relief is asked against her. As to a similar situation in Payne v. Hook, supra, [7 Wall. 432, 19 L.Ed. 260], the Supreme Court said: "and why make them defendants, when the controversy is not with them, but the administrator and his sureties? It can never be indispensable to make defendants of those against whom nothing is alleged and from whom no relief is asked. A court of equity adapts its decrees to the necessities of each case, and should the present suit terminate in a decree against the defendants, it is easy to do substantial justice to all the parties in interest, and prevent a multiplicity of suits, by allowing the other distributees, either through a reference to a master, or by some other proper proceeding, to come in and share in the benefit of the litigation."

And in Roos v. Texas Co. supra, Judge Learned Hand said, at page 172 of 23 F.2d: "On the other hand, it is well settled that a part of the beneficiaries of a trust may sue alone, though the fiduciary may later be subjected to another suit. Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260; Waterman v. Canal-Louisiana Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80; Rogers v. Penobscot Mining Co. [8 Cir.,] 154 F. 606; Thomas v. Anderson [8 Cir.,] 223 F. 41. * * * The inconvenience to the trustee from a duplication of suits is not considered a sufficient counterweight to the hardship of denying any relief to a beneficiary who cannot bring in all."

Late cases are to the same effect. See Bourdieu v. Pacific Oil Co., 299 U.S. 65, 70, 57 S.Ct. 51, 81 L.Ed. 42; Atwood v. National Bank of Lima, 6 Cir., 115 F.2d 861, and particularly Judge Parker's full discussion of the principles involved in Oxley v. Sweetland, 4 Cir., 94 F.2d 33.

If it is determined in this case that the plaintiff is entitled to one-third of the fund, and the representatives of Robert B. Parker to another one-third, it is still possible to give further consideration to the question as to whether a receiver should be appointed for the fund and how it should be then distributed or possibly held pending the intervention of Mrs. Winder in the case, which it is indicated by counsel for the plaintiff would very likely occur. And so far as possible prejudice to the defendant is concerned, it may also be pointed out that if he wishes to avoid a possible excess liability by reason of overlapping claims of diverse claimants, in separate suits, it appears he would be able, either in this case as a matter of defense or possibly in an original independent suit, to invoke the remedies of an interpleader proceeding.