**Dolly Cusker AKERS, Plaintiff,**

v.

**Rogers C. B. MORTON, Secretary of the Interior, et al., Defendants.**

**Civ. No. 907.**

United States District Court,
D. Montana,
Billings Division.

Sept. 22, 1971.

Gerald J. Neely, Billings, Mont., for plaintiff.

Keith Burrowes, Billings, Mont., for defendants.

### OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

By this action the plaintiff, Dolly Cusker Akers, widow of John J. Akers, seeks to review the action of the Secretary of the Interior in distributing the trust estate of John J. Akers. The action of the Secretary is subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Tooahnippah v. Hickel, 397 U.S. 598, 90 S.Ct. 1316, 25 L.Ed.2d 600 (1970). The scope of the review is provided by 5 U.S.C. § 706.

On this review the Court does not hear the matter de novo. It is limited to a review based on the record made in the administrative proceeding. Coleman v. United States, 363 F.2d 190 (9th Cir. 1966); Couch v. Udall, 265 F.Supp. 848 (W.D.Okl.1967). Only if the administrative action is unsupported by substantial evidence or is contrary to law may the decision be set aside.

Following a hearing Inheritance Examiner Elge found that John J. Akers was incompetent to execute the will of December 10, 1958. The case was transferred to Inheritance Examiner McKee. He held that on December 5, 1957, the testator was competent, approved the will of that date, denied plaintiff's claim to dower and distributed the trust estate in accordance with the terms of the will.

John J. Akers died on February 19, 1959. He had executed three wills dated respectively December 3, 1957, December 5, 1957, and December 10, 1958. At the time of his death John J. Akers was an allottee of land held in trust for him by the United States. The controlling statute is 25 U.S.C. § 373 reading in pertinent part:

Any person * * * having any right, title, or interest in any allotment held under trust or other patent containing restrictions on alienation * * * shall have the right prior to the expiration of the trust or restrictive period, and before the issuance of a fee simple patent or the removal of restrictions, to dispose of such property by will, in accordance with regulations to be prescribed by the Secretary of the Interior: *Provided, however,* That no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior: *Provided further,* That the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator. * * *

After the denial of a petition for rehearing, an appeal was taken to the Regional Solicitor of the Department of the Interior, the officer authorized to make the final decision on behalf of the Secretary. He dismissed the appeal and affirmed the order denying the petition for rehearing.

Plaintiff claimed that the decedent was incompetent to make a will, that the case should not have been transferred from Examiner Elge to Examiner McKee, that Examiner Elge's findings were conclusive, and that in any event plaintiff, as a widow, was entitled to dower under Montana Law. R.C.M.1947, § 22–101.

No point would be served by an elaborate review of the evidence. There was evidence that John J. Akers was an alcoholic and that he suffered long periods of incompetence; however, the testimony of the subscribing witnesses was to the effect that on December 5, 1957, when the will was executed, testator was sober and understood what he was doing. There was evidence that on December 3, 1957, decedent was sober and rational. Other evidence, if believed, was sufficient to prove that testator did have sober moments and that when sober he was rational. It cannot be said that this evidence was unsubstantial.

Plaintiff cites no authority for the proposition that the case should not

have been transferred to Examiner McKee. There is no indication that there was any improper motivation for the transfer. Rather it appears that the reservation out of which this case arose had been assigned to Examiner McKee and that this case fell to him as a part of that assignment. What happened here commonly happens in the United States District Courts. Different judges preside over the separate parts of a single case. No reason appears why an administrative agency should enjoy less flexibility.

Examiner Elge's findings as to the 1958 will did not bind Examiner McKee. In April 1964, following an extensive hearing, Examiner Elge found among other things:

> The evidence considered as a whole is preponderant that John Akers lacked testamentary capacity at the time of execution of said purported last will and testament of December 10, 1958. He had passed the point of onset of permanent damage to his brain from alcohol a number of years prior to the making of said purported last will and, at the time of its execution, lacked that mental capacity to meet the test of a sound and disposing mind.

In her order, however, the following appears:

> This order is not dispositive of the decedent's estate and is not a final order, there being earlier wills extant. At such time as a final order shall have been issued, a petition for rehearing may include this ruling on said purported will of December 10, 1958, as well as any matters contained in said final order.

> This case be and the same hereby is transferred to Examiner of Inheritance David J. McKee, whose assigned agencies include Fort Peck, for appropriate proceedings in connection with prior wills and final disposition.

It may be, although that problem is not reached, that one examiner could not overturn a ruling made by a previous examiner. That was not done here. Examiner Elge specifically confined her order to the December 10, 1958, will, without deciding the problem posed by the existence of prior wills. While the evidence bearing on wills executed a year apart may overlap and did here, the issues as to validity are separate. Here the finding did not purport to reach testator's competence at any time other than December 10, 1958. Examiner Elge did find that testator had passed the point of onset of permanent brain damage a number of years prior to 1958, and that may be, but there is no finding that that permanent damage was of sufficient severity to render testator incapable of rational interludes in 1957. The witnesses who testified that decedent was incompetent in 1958 considered events arising after December 5, 1957, as did Examiner Elge in making her findings of incompetency. Examiner McKee had (contrary to the assertions in plaintiff's brief) before him evidence which was not presented to Examiner Elge, including the testimony of the subscribing witnesses to the wills of December 3 and December 5, 1957. In short, Examiner McKee decided a different issue on different evidence.

■■ The Secretary properly denied plaintiff's claim of a dower right in the allotted lands. Dower is a product of two things: a law which creates or recognizes it and a marriage contract. The law of Montana, except as the same is adopted by Congress as the law of the United States, does not apply to trust patent lands. The Montana Enabling Act (25 Stat. 676, § 4) provides in part:

> That the people inhabiting said proposed States do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said In-

dian lands shall remain under the absolute jurisdiction and control of the Congress of the United States. * * *

See United States v. McIntire, 101 F. 2d 650 (9th Cir. 1939).

The federal law does not incorporate the state laws limiting the right of a testator to will. Thus in Blanset v. Cardin, 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950 (1921) it is said:

Our conclusion is the same as that of the Court of Appeals, 'that it was the intention of Congress that this class of Indians should have the right to dispose of property by will under this act of Congress, free from restrictions on the part of the state as to the portions to be conveyed or as to the objects of the testator's bounty, provided such wills are in accordance with the regulations and meet the approval of the Secretary of the Interior.'

The right of dower has no basis in the Federal Constitution. It is a privilege which the state may grant, deny, or limit. It is not a part of the privileges of citizenship. Ferry v. Spokane, Pacific & Seattle Railway Co., 258 U.S. 314, 42 S.Ct. 358, 66 L.Ed. 635 (1922).

Since there is no federal law of dower there was no law in existence which at the time of plaintiff's marriage or at the time of her husband's death invested her with any rights of dower.

Since plaintiff was deprived of no right, all that remains is a rather nebulous argument that some federal constitutional rights (presumably in the nature of equal protection—plaintiff cites the Fifth, Ninth, and Thirteenth Amendments) were denied plaintiff because the United States did not treat her with respect to her husband's trust lands as the State of Montana treats other widows. If the argument is not answered by the fact that it is only because of John J. Akers' special treatment as an Indian that he had allotments and that non-Indian husbands do not have trust lands to which dower could attach, it is only necessary to say that the United States in dealing with Indians and Indian lands is not required to conform its laws to the laws of the states wherein the reservations lie and thus equate trust patent Indians in all aspects with other citizens of the state. The concept of the tribe as a sovereign with power to make and administer law (see Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965); Glover v. United States, 219 F.Supp. 19 (D.Mont.1963)) coupled with the concept that the United States is a trustee for the individual Indian ward (see Board of County Commissioners v. Seber, 318 U.S. 705, 63 S. Ct. 920, 87 L.Ed. 1094 (1943); Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956)) would be sufficient to create a legitimate basis for classification were there otherwise some equal protection problem.

The motion for summary judgment is granted, all restraining orders or injunctions now in effect are dissolved, and it is ordered that plaintiff be denied all relief.