**A. Henry "Hank" SOAR et al.**

**v.**

**NATIONAL FOOTBALL LEAGUE PLAYERS' ASSOCIATION et al.**

**Civ. A. No. 4986.**

United States District Court,
D. Rhode Island.

Jan. 17, 1975.

Leonard Decof, Raymond W. Monaco, Providence, R. I., for plaintiffs.

Edward F. Hindle, Thomas D. Gidley, James A. Jackson, Thomas H. Quinn, Providence, R. I., for defendants.

## MEMORANDUM

PETTINE, Chief Judge.

This is a class action brought by plaintiffs on behalf of themselves and all other similarly situated persons who retired as players from the National Football League ("NFL") before 1959.

Plaintiffs allege in their four-count amended complaint that, in or about 1962, a pension trust for retired "NFL" players was established pursuant to an agreement between the National Football League Players' Association ("NFLPA"), the "NFL" and the member clubs thereof. It is alleged that at the time said agreement was executed, the "NFLPA" informed them that the corpus of the trust would be of insufficient size to permit the payment of benefits to those players who retired prior to 1959 but that, as additional moneys became available to fund the trust, the cut-off date "would be extended back commensurate with the funding so as to include plaintiffs."

Claiming that sufficient funds are now available for the payment of benefits to all former "NFL" players, whatever the date of their retirement, plaintiffs seek, among other relief,[1] that they be included as beneficiaries of the "NFL" pension plan upon the same terms and conditions as the present beneficiaries and, in Counts I and IV, demand that a resulting or constructive trust be impressed for their benefit upon the corpus of the "NFL" pension trust.

Defendant United States Trust Company of New York ("The Trust Company") has served as Trustee of the "NFL" pension trust since early 1967, and is sued in this action in that capacity. "The Trust Company" now moves this Court, pursuant to Rule 19, Fed.R. Civ.P., to compel joinder of the individual members of the Retirement Board of the Bert Bell NFL Player Retirement Plan ("The Retirement Board") as defendants herein, or in the alternative for dismissal of the Complaint as against The Trust Company on the ground that said Retirement Board is an indispensable party.

The Retirement Board was formed as a result of the 1970 Collective Bargaining Agreement between the NFLPA, the National Football League Player Relations Association and the newly expanded membership of the NFL. Pursuant to Article VI of that Agreement, the proposed Bert Bell NFL Player Retirement Plan (Restated as of April 1, 1970) (hereinafter "the Plan") was to be administered by a Retirement Board comprised of four persons designated by the NFLPA and four persons designated

---

I. Other relief prayed for by plaintiffs includes:

(1) that defendants NFL, Rozelle (the Commissioner of the NFL) and the NFLPA create a separate but comparable pension trust expressly for plaintiffs, or to have those defendants pay them a sufficient sum so that they may establish a similar pension trust of their own;

(2) that defendants NFL, Rozelle and the NFLPA render an accounting to plaintiffs of all monies placed and to be placed in the Trust;

(3) that defendants NFL, Rozelle and the NFLPA pay to plaintiffs various money damages, death benefits and costs.

The above cited relief is not relevant to the instant motion of defendant United States Trust Company (the "Trust Company"), since it does not directly affect the current assets of the pension trust, of which the Trust Company is trustee. Only that relief cited in the text (i. e., modification of the present plan to include plaintiffs as beneficiaries, and impression of the current trust assets with a constructive or resulting trust) is relevant to the instant motion.

by the member clubs of the NFL. In Section 3(e) of Article VI [2] the parties specifically agreed to delegate to the Retirement Board "all powers incident to the operation of the Plan and the Trust, including but not limited to the power to amend the Plan, the Trust Agreement and any insurance contracts associated with the predecessor plans or this Plan, to construe the Plan and to reconcile inconsistencies in the Plan." The Plan itself incorporates much of the language contained in the Collective Bargaining Agreement [3] and in addition the Retirement Board is granted certain limited powers to amend, curtail or terminate the Plan.[4] Both the NFLPA and the member clubs of the NFL have the exclusive right under the Plan to appoint four members of the Retirement Board, as well as authority to remove and appoint a replacement for any member of the Board either has respectively appointed.[5]

2. Section 3(e) of Article VI of the Collective Bargaining Agreement of 1970 provides as follows:

"(e) Except as limited by (f) below, the powers granted to the Retirement Board under the Retirement plan shall include all powers incident to the operation of the Plan and the Trust, including but not limited to the. power to amend the Plan, the Trust Agreement and any insurance contracts associated with the predecessor plans or this Plan, to construe the Plan and to reconcile inconsistencies in the Plan.

(f) No action of the Retirement Board shall:

1. Alter the amount of the contributions otherwise payable to the Plan;

2. Cause the Plan and the Trust to fail to qualify under Section 401(a) and 501(a), or cause any portion of contributions to the Plan to fail to be deductible to the Member Clubs under Section 404(a) of the Internal Revenue Code;

3. Reduce, as a direct result of an amendment, any benefit credits already earned and otherwise payable under the Plan;

4. Amend the Plan in a manner that will render the Plan actuarially unsound."

3. Section 8.4 of the Plan provides:

"8.4 Subject to the restrictions of 8.5, the Retirement Board shall have all necessary powers incident to the creation, administration, implementation and operation of the Plan and Trust, including but not limited to the power: °

A) To define and amend the terms of the Plan and Trust, to construe the Plan and Trust and to reconcile inconsistencies therein.

B) To pay all reasonable and necessary expenses of the Plan from the assets of the Trust.

C) To adopt from time to time such By-Laws, procedures and forms as the Retirement Board considers appropriate in the operation and administration of the Plan and Trust."

4. Section 10.1 of the Plan provides:

"10.1 Subject to the provisions of Article 8 hereof, the Retirement Board may amend, curtail or terminate this Plan, but no amendment, curtailment or termination shall provide for any use of assets held under the Trust other than for the benefit of Players and their beneficiaries; and no assets of the Trust shall ever revert to or be used or enjoyed by any Employer or the League."

5. Section 8.1 of the Plan provides:

"8.1 The Retirement Board shall consist of eight (8) members. The members of the Retirement Board shall be selected and shall serve subject to the following provisions:

A) The NFLPA shall have the exclusive right to appoint four (4) members of the Retirement Board, two of whom shall be Active Players and two of whom shall be Vested Inactive Players, with equal representation from the American Conference and the National Conference.

B) The Employers shall have the exclusive right to appoint. four members of the Retirement Board.

C) The NFLPA and the Employers shall have the authority to remove and appoint a replacement for any member of the Retirement Board either has respectively appointed. Any member may resign by written notice addressed to the Vice-Chairmen and delivered personally, or mailed to the Vice-Chairmen by Certified Mail, Return Receipt Requested. If any vacancy shall occur in the membership of the Retirement Board, the appointing party shall designate his successor.

D) The NFLPA and the Employers shall each be entitled to name an alternate for each member of the Retirement Board which it or they shall have appointed. Such alternate shall be designated in writ-

In the Trust Agreement itself, while the Trustee is granted control over the investment of Trust assets, the Retirement Board is granted the right to determine the amounts, recipients and times of payment of retirement benefits.[6]

Defendant Trust Company takes the position that because of the Retirement Board's comprehensive control over the terms and beneficiaries of the NFL pension plan, and because of the absence of such control by any of the existing defendants, that the Retirement Board must be joined as a party defendant. In the alternative, if the individual members are not subject to personal jurisdiction before this Court or, by their presence in the case, would destroy this Court's subject matter jurisdiction, the Trust Company seeks dismissal of the Complaint insofar as it affects the Trust Company by seeking reformation of the Plan and imposition of a resulting or constructive trust upon the Trust assets.

Under the terms of Rule 19(a), the Trust Company maintains that in the absence of the Retirement Board "complete relief cannot be accorded among those already parties," [7] in that the ex-

---

ing to the Vice-Chairmen at least five (5) days prior to the date of any Retirement Board meeting. An alternate member shall be entitled to act as a member of the Retirement Board only in the absence of the regular member."

6. The Trust Agreement provides in pertinent part:

"Section 4. It shall be the duty of the Trustee to hold, invest and reinvest the assets of the Trust Fund in accordance with the powers and subject to the restrictions stated herein provided, and to disburse moneys and other properties therefrom on order of the Retirement Board constituted under and pursuant to the provisions of the Plan, at the time or times and to the payee or payees specified by the Retirement Board upon orders to or requisitions upon the Trustee in such form as the Retirement Board and Trustee may establish . . . .
\* \* \* \* \*
"Section 12. All orders, requests, instructions and objections of the Retirement Board to the trustee shall be in writing and in such form as the Retirement Board and Trustee shall establish. The Trustee shall act and shall be fully protected in acting in accordance with such orders, requests, instructions and objections . . . .
"Section 13. In the event of the termination of the Plan as provided therein, the Trustee shall dispose of the assets of the Trust in accordance with the written order of the Retirement Board.
"Section 14. The Retirement Board shall have the right at any time and from time to time to amend in whole or in part any or all of the provisions of this Agreement by notice thereof in writing delivered to the Trustee provided that no such Amendment which affects the rights, duties or responsibilities of the Trustee may be made without its consent, and provided further that no such Amendment shall authorize or permit the use or diversion of any part of the corpus or income of the Trust other than for the exclusive benefit of such Plan members and their beneficiaries."

7. Rule 19, Fed.R.Civ.P., provides in pertinent part:

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among

isting defendants in the action cannot be ordered to amend or modify the terms of the Plan or the Trust when they have no power or authority to do so. Secondly, citing Rule 19(a)(2)(ii), see note 7 supra, the Trust Company argues that disposition of this action in the absence of the Retirement Board may subject the Trust Company to a substantial risk of incurring inconsistent obligations. Quoting from the Trust Company's memorandum at 12:

"If this Court were to rule that plaintiffs may be included as beneficiaries of the Trust without the Retirement Board being made a party hereto, the Trust Company's subsequent payment of retirement benefits to plaintiffs would be in violation of its duty to pay only those persons designated by the Retirement Board. The Trust Company would thereby be exposed to a substantial risk of being surcharged for these payments by the Retirement Board, upon which this Court's judgment would have no binding effect."

The main thrust of plaintiffs' position in opposition to this motion is that the Retirement Board neither represents any separate interest nor holds any independent authority apart from the parties which have created the Board and appoint the members thereto, i. e. the NFLPA and the member clubs of the NFL. Therefore, plaintiffs contend that complete relief can be afforded without the joinder of the Retirement Board. Quoting from plaintiffs' memorandum at 18:

"A judgment against defendants, N.F.L. and the current N.F.L.P.A., will simply have the effect of amending the Fund or Trust which is the

basis of the Board's existence. With new eligibility requirements inserted, the Board simply could not enforce any conflicting obligations. Thus, defendant's fears are groundless."

### Discussion

The classic definition of indispensability was propounded by the Supreme Court in Shields v. Barrow, 58 U.S. 130, 17 How. 130, 15 L.Ed. 158 (1855). In that case it was held that indispensable parties are those

". . . who not only have an interest in the controversy; but an interest of such a nature that a final decree cannot be made without affecting their interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

██ While it is not clear from the present record whether the individual members of the Retirement Board are subject to the personal jurisdiction of this Court, it is perhaps a valid assumption that this is a reality. Nevertheless, it has oft been repeated that:

"The rule is that if the merits of the cause may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done; and a court of equity will strain hard to reach that result . . .

"We refer to the rule established by these authorities because it illustrates the diligence with which courts of equity will seek a way to adjudicate the merits of a case in the absence of interested parties that cannot be brought in." Bourdieu v. Pacific

the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions

in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Western Oil Co., 299 U.S. 65, 70–71, 57 S.Ct. 51, 53, 81 L.Ed. 42 (1936) (citations omitted).

The rules relating to indispensability, as a creature of equity jurisprudence, are not inflexible standards but must be viewed with an eye towards doing justice as among the parties that are before the court. *See* Stevens v. Loomis, 334 F.2d 775 (1st Cir. 1964); Britton v. Green, 325 F.2d 377 (10th Cir. 1963); Jaeger v. American International Pictures, Inc., 330 F.Supp. 274, 279 (S.D. N.Y.1971).[8]

■■■ With these basic equitable principles in mind, the Court must examine defendant's two-pronged analysis of the Retirement Board's indispensability. The first is that without the presence of the Retirement Board, complete relief cannot be accorded among those already parties. That the Retirement Board is given the power to define and amend the terms of the Plan and Trust does not of necessity mean that a Court order amending the Plan or Trust would be a fruitless gesture in the absence of the Board as defendant. Both the NFLPA and the NFL, as well as the Commissioner of Football who serves as Chairman of the Retirement Board, are presently defendants in this action. It is they who have created the Retirement Board and vested it with such powers as it possesses. In fact, the Retirement Board itself had its genesis in the Collective Bargaining Agreement of 1970. *See* note 2 *supra*. It is nowhere contended, nor does it seem reasonable, that the NFL and NFLPA, in any subsequent labor agreement, might not entirely dispense with the Retirement Board or, for that matter, agree to the abolition of the pension plan altogether. If ordered by this Court to include certain additional beneficiaries under the current plan, a duty would be placed on those defendants presently before the Court to modify those agreements which have created the Plan or Trust in such a way as not to be inconsistent with such a court order.[9] If this Court were to accept defendant's position herein, I would have to believe that the Retirement Board is entirely independent from those entities which created it and who appoint its members, and would be free to flaunt a court order running against the NFL and NFLPA. On the evidence before me, I cannot make such a wide-reaching assumption. The NFLPA and the member clubs of the NFL have retained the exclusive right to appoint the members of the Retirement Board, as well as the right to remove and replace any such member. *See* note 5 *supra*. Even if I were to assume, as the defendant Trust Company argues, that this power is tempered by an implied provision that removal must be in good faith and for cause, failure of any Board

---

8. These basic equitable principles are equally applicable today, subsequent to the 1966 amendments to Rule 19. *See* 7 Wright & Miller, Federal Practice and Procedure § 1612 at 121 (1972); 3A J. Moore, Federal Practice, ¶ 19.07 [2] (1974).

9. Defendant argues that neither the NFL nor the NFLPA retained an implied power to amend the Plan, and that the *exclusive* power to do so was granted to the Retirement Board. While it is true that nowhere did the NFL or the NFLPA expressly reserve this power, it is equally true that the Retirement Board was not expressly given the *exclusive* power to amend the Plan. The defendant cites the general rule that a settlor has no inherent power to alter or amend the terms of the trust and that only those persons in whom such a power has been expressly reserved may do so. It is evident, however the Plan, the Trust, and the Retirement Board are purely the product of the Collective Bargaining Agreement between the NFL and the NFLPA, and as such could be modified or terminated in any subsequent collective bargaining negotiations. Furthermore, a court in equity has inherent powers to modify the terms of the Plan or Trust, as long as all interested parties are before the Court. *See generally* 89 C.J.S. Trusts § 87b, p. 884. Since I do not find the Retirement Board to represent any interest apart from the NFL and the NFLPA, I feel all necessary parties are before the Court.

member to enforce a modified Plan that might be the product of a court order running against the NFL and the NFLPA would appear to be sufficient "cause" for removal of any member who would so act. Thus, even short of denominating the Retirement Board as a mere "agent" of the NFL and the NFLPA, the present defendants have sufficient "operational control" over the Board so as not to require the presence of the Retirement Board as an indispensable party to this action. *See* Ball v. Victor Adding Machine Company, 236 F.2d 170 (5th Cir. 1956) (*see especially* concurring opinion of Cameron, J.); Golden v. Kentile Floors, Inc., 52 F.R.D. 386 (N.D.Ga.1971); Gould v. Continental Coffee Company, 304 F.Supp. 1 (S. D.N.Y.1969).[10] Cf. Chastang v. Flynn & Einrich Co., 365 F.Supp. 957 (D.Md. 1973). I thus find that the present defendants have both the ability and authority to effectuate the relief sought by the plaintiffs. *See* Chan Wing Cheung v. Hagerty, 192 F.Supp. 452, 454 (D.R. I.1961).

There is simply no evidence before me that would lead this Court to assume that the Retirement Board represents any interests separate and apart from those of the present defendants, the NFL and NFLPA, or that to deprive the Retirement Board of representation in this matter would result in any deprivation of due process. *See* Britton v. Green, *supra.* The facts relevant to the merits of plaintiffs' claim do not concern an interpretation of the Trust Agreement or the Plan.[11] In fact, it is clear and undisputed that under the Plan as presently constituted, pension benefits accrue only to those NFL players who have retired subsequent to 1959, and not to the plaintiffs herein. Rather, the relevant inquiry concerns the understanding among the plaintiffs, the NFL and the NFLPA as to the availability of pension benefits to those players who retired prior to 1959. The facts pertinent to this question are alleged to have occurred prior to the existence of the Retirement Board or the Plan itself. The presence of the Retirement Board,

10. In each of the aforementioned cases, employees were suing their respective employers for funds allegedly due them under various profit sharing or pension plans. In each, the question arose as to whether the Board or Committee charged with responsibility of administering such plans were indispensable parties to the litigation. In each case, the controlling factor was the lack of independence of the Board *vis-a-vis* the employer/defendant, as well as the degree of operational control exerted by the employer over the Board's activities. In each case, an important consideration was the power reserved exclusively to the employer to appoint and remove members of the Board or Committee. In addition, in the *Golden* case, the fact that the Board members were protected and indemnified from personal liability for acts or omissions, except for willful misconduct, was deemed a relevant consideration. A similar "save-harmless" clause exists in the instant case. *See* Plan, § 8.9:

"8.9 Except for gross negligence or wilful misconduct, no [Retirement Board] member shall incur any individual liability for any act or failure to act pursuant to this Plan or the Trust. No member shall be liable for the act of any other member. In the event that any dispute shall arise as to any act to be performed by the Retirement Board, the members may postpone the performance of such act until actual adjudication of such dispute shall have been made in a court of competent jurisdiction or until they shall be indemnified against any liability."

While recognizing that some differences exist between the facts as involved in *Ball, Golden* and *Gould* and the instant facts, I find the analogies compelling and find that the Retirement Board is sufficiently tied to the interests of the NFL and NFLPA as to override the theory that it is independent and thus indispensable.

11. In this respect, defendant's citation to Jacobsen v. Luckenbach Steamship Co., 201 F. Supp. 883 (D.Or.1961), as controlling authority is doubtful, since in that case an actual construction of the pension trust agreement relative to plaintiff's eligibility thereunder led the court to find the Trustees to be indispensable parties.

therefore, can add nothing to the determination of the merits of this case. *See* Ball v. Victor Adding Machine Company, *supra*, 236 F.2d at 175 (Cameron, J., concurring); Local Union No. 641 of the Amalgamated Butcher Workmen v. Capital Packing Company, 32 F.R.D. 4 D.Colo.1963).

The second prong of defendant Trust Company's argument is that the absence of the Retirement Board from this litigation presents a substantial risk that the Trust Company will incur inconsistent obligations if judgment for the plaintiffs is entered herein. I find that the risk of the Trust Company being surcharged by the Retirement Board for obeying an order of this Court is entirely too speculative to require a finding of indispensability. In the first place, as previously mentioned, since the existence of the Retirement Board rests entirely upon the agreement of the NFL and the NFLPA, and the membership thereof rests exclusively with those parties, there exists such "operational control" over the Board by the present defendants as to minimize any danger of the Retirement Board surcharging the Trust Company for obedience to any order of this Court. Furthermore, even assuming there exists some vague possibility of such action by the Retirement Board, the Court is mindful of the general equitable principle espoused by Judge Frankel in Jaeger v. American International Pictures, Inc., *supra*, 330 F.Supp. at 279:

"The court's primary function is to do justice between the parties before it; this function should supersede its obligation to protect parties from multiple law suits, or uncertain results." [12] *See also* Wesson v. Crain, 165 F.2d 6 (8th Cir. 1948); Meyerding v. Villaume, 20 F.R.D. 151 (D.Minn.1957).

Finally, there remains an additional significant equitable factor which leads me to the conclusion that the Retirement Board is not an indispensable party. Plaintiffs are looking to the courts to do justice in a dispute having a substantial impact on their lives and the lives of their families. If the Retirement Board were an indispensable party, and assuming the individual members of the Board are citizens of various different states, it might be conceivable that much of the relief requested by plaintiffs would be unattainable in *any* jurisdiction. Furthermore, since the NFL and the NFLPA have exclusive power to appoint and remove members of the Board, perhaps those parties could defeat any action involving the pension plan by the simple expedient of naming a new Board comprised of citizens not subject to the jurisdiction of the court in which suit is brought. Such a potential result is unacceptable. *See* Ball v. Victor Adding Machine Company, *supra*; Gould v. Continental Coffee Company, *supra*.[13]

Defendant Trust Company would have this Court believe that the Retirement Board is a totally autonomous monolith which, in the event a Court order is en-

12. In *Jaeger* the issue before the Court was whether the copyright holder was an indispensable party in copyright litigation. While recognizing there was some possibility of the defendant facing multiple lawsuits if one of the copyright owners was not joined, the Court found the foreign copyright owner not indispensable, and found that the threat of such multiple liability was simply not "substantial" under Rule 19(a)(2)(ii), Fed.R. Civ.P.

13. Cf. Rush & Halloran, Inc. v. Delaware Valley Finance Co., 180 F.Supp. 63, 66 (E. D.Pa.1960):

". . . the scope of the concept of an 'indispensable party' cannot be too broad but must be limited to include only those whose interests are so involved in the issue at hand that it is better that there be no court with jurisdiction over an action than that it be allowed to proceed without them. The policies favoring the resolution of all of the claims of different persons arising out of a common contract in the same suit are not as great as those favoring the availability of a forum for every bona fide claimant."

tered against those responsible for its existence and for whom it serves, would act independently, making the relief sought by plaintiffs unattainable, and subjecting the Trust Company to reprisals for adherence to a court order. The evidence before this Court does not support such a conclusion, and I do not find the Retirement Board to represent any interest distinct from that represented by the defendants presently subject to the jurisdiction of this Court.

Defendant Trust Company's motion to compel joinder or, in the alternative, to dismiss the Complaint as against it is hereby denied. An order will be prepared accordingly.