Robert R. SHELTON, et al.,
Plaintiffs–Appellees
Cross–Appellants,

v.

EXXON CORPORATION, Defendant–
Cross Defendant Appellant
Cross–Appellee.

v.

KING RANCH, INC., et al., Defendants–
Cross–Plaintiffs Appellees
Cross–Appellants.

In re Robert R. SHELTON, et
al., Petitioners.

Nos. 87–6021, 87–6049.

United States Court of Appeals,
Fifth Circuit.

April 27, 1988.

Joseph D. Jamail, Jr., Jamail, Kolius & Mithoff, Frank M. Staggs, Joe H. Foy, Mary Katherine Kennedy, Sarah B. Pierce, Houston, Tex., for Shelton, et al.

Alfred H. Ebert, Jr., Andrews & Kurth, Houston, Tex., for King Ranch, et al.

Joe H. Foy, Bracewell & Patterson, Sarah B. Pierce, Reynolds, Shannon, Miller, Blinn, White & Cook, Joe H. Reynolds, Houston, Tex., for Shelton Ranches, Inc., et al.

McGinnis, Lochridge & Kilgore, Barry L. Wertz, Austin, Tex., Frank G. Harmon, Michael Graham, Baker & Botts, William N. Blanton, III, Exxon Corp., Houston, Tex., for Exxon Corp.

Before RUBIN, JOLLY and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Appellant Exxon Corporation challenges the dismissal of a lawsuit between Exxon as defendant and Robert Shelton and King Ranch as plaintiffs. The case was dismissed by the district court for lack of diversity jurisdiction when the district court realigned King Ranch as a third-party defendant in the suit. Because we find that King Ranch is not an indispensable party to the suit, we reverse the district court's decision and remand it for further proceedings.

I

This case, involving underpayment of royalties, is made far more complicated by the confusion of who is on whose side. Although the fundamental facts of the lawsuit are not difficult to follow, they are

eclipsed by procedural circumstances that surround the present controversy: whether King Ranch is a plaintiff in the suit or is actually an indispensable third-party defendant, thereby destroying federal diversity jurisdiction. We outline only those elements that are ultimately relevant to understanding our decision here.

Robert Shelton and his various corporate entities ("Shelton") own a royalty interest in the minerals of King Ranch, Inc., and King Ranch Oil & Gas ("King Ranch") through dividends and conveyances. King Ranch and Shelton are both Texas corporations. King Ranch leased these mineral interests to Exxon Corporation, a Delaware corporation with its principal place of business in New Jersey. In 1977 King Ranch and Shelton discovered that Exxon was not paying King Ranch the full amount required by the lease for natural gas royalties.

After numerous unsuccessful attempts to persuade King Ranch to collect full value for the royalties, in 1979 Shelton filed suit in state court against both Exxon (for underpayment of royalties) and King Ranch (for its failure to enforce the agreement). At some point King Ranch initiated its own action against Exxon, in a separate proceeding, which was settled on June 5, 1980 as to all gas produced up to September 1, 1980.

Shelton objected to that settlement, claiming that under its royalty agreement King Ranch did not have the right to negotiate for Shelton. Both Exxon and King Ranch maintain that Shelton is bound by the settlement agreement because King Ranch holds the exclusive right to enforce mineral leases, based upon clauses in three documents between Shelton and King Ranch: a 1957 mineral conveyance, a 1977 mineral distribution agreement, and 1978 assignment of claims. Both King Ranch

and Exxon argue, therefore, that Shelton lacks standing to sue.

After settling its lawsuit with Exxon, King Ranch, exercising its discretion under Texas law, petitioned to have Shelton's lawsuit removed to the county of King's residence. Seeking to avoid that result, Shelton, on February 9, 1983, entered voluntary nonsuit against King Ranch in order to proceed against Exxon, the primary defendant in the case. On March 1, 1983, Exxon removed the case to federal court on grounds of diversity jurisdiction and then moved under Fed.R.Civ.Proc. Rule 19 to join King Ranch in the suit. Exxon based this joinder upon its affirmative defense that Shelton lacked legal capacity to sue Exxon because King Ranch had exclusive enforcement rights under the agreement. King Ranch counterclaimed for underpaid royalties from Exxon for the period from 1980–1987. The district court granted the joinder of King Ranch as a party defendant on November 28, 1983. At that time, the court requested briefs on the proper alignment of King Ranch. In these briefs, all three parties agreed that King Ranch should be joined as a plaintiff. For some reason, however, the district court did not formally realign King Ranch until October 16, 1985.

On December 12, 1983, Shelton filed his fourth amended complaint in which he alleged an alternative claim against King Ranch. Specifically, Shelton claimed that if the settlement between King Ranch and Exxon was binding, then Shelton was entitled to relief from King Ranch for breach of fiduciary duty.[1]

The case was then reassigned to another district judge. On July 28, 1987, just prior to a pretrial conference, King Ranch and Exxon entered a settlement (from which Shelton was expressly excluded) for royalties from September 1980 until the date of trial. A stipulation agreement, signed by

---

1. Paragraph 6 of the fourth amended complaint is as follows:

Expressly in the alternative, plaintiffs allege that if the court should hold that the settlement is binding on them, then King Ranch, Inc., and King Ranch Oil & Gas, Inc. should be held liable to them for damages that

through their negligence, their violations of fiduciary duty and their wilful refusal to obey plaintiffs' instructions not to enter into the settlement on plaintiffs' behalf, plaintiffs were wrongfully deprived of the value of their claim against Exxon.

all three parties, was filed in district court after the execution of the settlement. It stated that (1) King Ranch and Exxon agreed to settle all royalty claims from September 1, 1980 through June 30, 1987 except as to Shelton; (2) King Ranch and Exxon continued to assert that Shelton lacks standing to sue; (3) Shelton agreed to dismiss any claim of any kind against King Ranch arising out of Exxon's counterclaim against Shelton for overpayment of royalties; (4) King Ranch and Exxon would not contest Shelton's standing to sue with respect to any royalties owed for oil produced between September 1, 1980 and June 30, 1987. At the pretrial conference, therefore, the court reexamined the alignment of the King Ranch entities and determined, *sua sponte*, that King Ranch should be realigned as a defendant in the case, that King Ranch was an indispensable party to the suit and that as a result of its realignment, the court lacked subject matter jurisdiction because there was no longer complete diversity (since King Ranch and Shelton are both Texas corporations). The district court relied on *Owen v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), to dismiss the suit rather than remand the case to the state court.

## II

All three parties now appeal the decision of the district court. Exxon, the appellant before this court and King Ranch on cross-appeal, argue that the district court erred in not retaining jurisdiction because King Ranch was properly aligned as a plaintiff or, in the alternative, King Ranch is not an indispensable party to the action and therefore it should have been dismissed as a party so as to preserve diversity jurisdiction. Shelton does not object to the court's finding of lack of subject matter jurisdiction, but on cross-appeal (and on petition for a writ of mandamus) urges this court to require the district court to remand, rather than dismiss, the case.

When Exxon removed the case from state court and joined King Ranch, the only claim involved was made by Shelton as plaintiff, against Exxon, for underpayment of royalties. Since that time, the many claims, counterclaims and defenses that have been raised, dismissed, dropped and raised again in this three-ring event are too numerous to describe, nor is it necessary to do so. At the next relevant point, however, that is when the case was dismissed, it is clear that four claims remained in the suit: (1) Shelton's claim against Exxon for underpaid royalties; (2) Exxon's counterclaim against Shelton for overpaid royalties; (3) Shelton's alternative counterclaim against King Ranch for allegedly breaching its fiduciary duty when, over Shelton's objections, it settled for too little with Exxon; and (4) King Ranch's claim for contribution against Exxon if held to be liable to Shelton. Since all claims between Exxon and King Ranch had been settled, it is only these four claims that are relevant in our analysis of this appeal.

Because it is not necessary to decide, we will merely assume that the district court did not err when it realigned King Ranch as a defendant. Nevertheless, we reverse the district court's dismissal and remand the case, because we find that at the time of dismissal King Ranch was not an indispensable party under Rule 19. We need not address Shelton's petition for writ of mandamus, therefore, or other issues on appeal and cross-appeal as they are rendered moot.

## III

Exxon's first argument is that the district court erred when it realigned King Ranch as a defendant. Admittedly we have some doubts about the correctness of the district court's holding—even in the light of the confusing and frustrating history of this case—when, at a very late stage in the proceedings, the court realigned King Ranch as a defendant despite the fact that the primary focus of the lawsuit is recovery of royalties from Exxon for both King Ranch and Shelton. Nevertheless, Shelton presents persuasive evidence that the interests of King Ranch and Exxon were aligned, and we therefore assume, because it is not necessary to decide, that Shelton's argument is well-taken and the

district court did not err. We therefore turn to address whether King Ranch was an indispensable party to the lawsuit under Rule 19.

## IV

Exxon argues that the trial court erred when it held that King Ranch is an indispensable party, but instead should have found King Ranch only a necessary party and dismissed it and retained diversity jurisdiction over the case.

Rule 19 of the Federal Rules of Civil Procedure requires that if, as a matter of equity the court finds that the lawsuit cannot proceed without the absent party, then that party be considered indispensable and the case dismissed. If, however, the lawsuit can proceed, the party is only a necessary one.[2] Unless the court finds that a party is indispensable, therefore, it has no discretion, except in the most exceptional cases, to dismiss the case even if a necessary party cannot be joined. *IMFC Professional Services of Florida, Inc. v. Latin America*, 676 F.2d 152 (5th Cir. 1982).

To distinguish an indispensable party from a necessary one, the court must focus on four factors established in Rule 19(b):

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In this instance, the parties agree that the controversy centers around the first factor, whether a judgment rendered in King Ranch's absence will be prejudicial to either King Ranch, Exxon or Shelton. As noted above, at this juncture, with King Ranch's and Exxon's claims against each other fully settled, four claims remain in this suit: (1) Shelton's suit for underpaid royalties against Exxon; (2) Exxon's counterclaim for overpaid royalties against Shelton; (3) Shelton's counterclaim, pleaded alternatively, against King Ranch for breach of fiduciary duty in settling Shelton's claims for too little; and (4) King Ranch's claim for contribution from Exxon in the event Shelton should prevail on its fiduciary breach claim. With these issues in mind, therefore, we turn to examine the first, most critical factor in our Rule 19 analysis, that is, whether any party will be prejudiced by the absence of King Ranch.

Before the trial court can resolve the ultimate issue of royalty payments in this case, the court must obviously first determine whether Shelton has standing to sue Exxon under the contract. A resolution of the standing issue does not require the presence of King Ranch to avoid subsequent prejudice to any party. If Shelton does have standing to sue Exxon, he may recover from Exxon for all underpaid royalties from 1973 through 1987. If so, Shelton's claim for breach of fiduciary duty against King Ranch will be moot because Shelton will be permitted to set aside the King Ranch–Exxon agreement. If, on the other hand, Shelton has no standing to sue Exxon, and his suit against Exxon is dismissed, King Ranch has sole authority to enforce the royalty agreement and Exxon will be completely exonerated from any further liability, having already settled

2. Rule 19 states, in pertinent part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action.... If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.

with King Ranch. In that instance, however, Shelton will not be prejudiced in his rights against King Ranch because he may proceed in a separate lawsuit to determine whether King Ranch's settlement with Exxon, over Shelton's objections, violated any fiduciary duty King Ranch owed him. In either case, no party is prejudiced by the failure to join King Ranch in this suit.

Thus Shelton cannot be prejudiced by King Ranch's absence because he has the same set of rights against it, whether it is a party to this suit or not. Exxon is not prejudiced because Shelton's claim against it can be fully resolved without King Ranch. Furthermore, it is obvious that King Ranch's absence will not affect Exxon, since Exxon has settled all claims in this lawsuit that it had against King Ranch. Finally King Ranch is not prejudiced by its own absence in any way. It only faces the possibility that Shelton will later bring an alternative claim for breach of fiduciary duty against it. The outcome here need not have a binding effect upon that suit, however.[3] If the court determines that Shelton *does not* have standing to sue Exxon, there is no need to determine liability for royalties under the contract. If Shelton *does* have standing, liability will be assessed, but only against Exxon. The effect on future litigation is the same regardless of whether King Ranch is sued in counterclaim by Shelton in federal court or later in state court after the federal claims have been litigated.

Shelton has never argued that King Ranch is an indispensable party, but merely "concedes" that determination of this issue is within the district court's discre-

tion. Shelton does contend, however, that the failure to join King Ranch in this suit is potentially harmful either to Shelton or to King Ranch, depending upon whether Shelton has standing to sue Exxon. Shelton argues that if he is permitted to collect royalties from Exxon directly, King Ranch's agency relationship with others who own royalty interests may be adversely affected. If Shelton does not have standing to sue Exxon, and King Ranch is not joined as a party, then Shelton will be forced to bring a second suit against King Ranch.

It appears to us, from our own analysis and statements made at oral argument, that the court's decision regarding Shelton's standing to sue will be declaratory and therefore may, if declaratory relief is granted, have a permanent, binding effect upon future dealings between King Ranch and its other royalty holders. Such declaratory relief would seem to be potentially harmful to King Ranch, as Shelton argues here. But at oral argument King Ranch made its position unmistakably clear. King Ranch argued that it will suffer no actual prejudice from a final decision on this issue. If the district court determines that Shelton has standing to recover from Exxon, King Ranch concedes that this will be permanent and binding, but argues that such a decision will have no prejudicial effect because future litigation by Shelton will be directed to Exxon only, not to King Ranch. King Ranch argues that, in such an event, future rights with other royalty holders will be unaffected because Shelton seeks declaratory rights only to itself, not other parties. Moreover, King Ranch ar-

---

**3.** It is possible, at least in theory, that because King Ranch and Exxon have stipulated not to contest Shelton's standing to sue with respect to the period from 1980 to 1987, the district court could determine that Shelton lacks standing to sue Exxon under the contract but nevertheless, based upon the stipulation, proceed to decide the issue of underpaid royalties to Shelton for the period from 1980 to 1987. If such a determination would serve as *res judicata* on the amount of royalties due for the pre–1980 period in a subsequent proceeding by Shelton against King Ranch for breach of fiduciary duty, King Ranch might possibly be prejudiced in its absence from this litigation if certain assumptions

are made. We are uncertain what the "no contest" paragraph of the settlement agreement means, especially since Exxon also stated in the same agreement that it continued to assert that Shelton lacked standing. We are also uncertain whether a determination on the post–1980 method of royalty calculation would have any controlling effect on the pre–1980 method.

Because all three of the parties ignored this issue both in their briefs and at oral argument, and because there is no evidence in the record before us by which we can determine the issue, we will assume that it is not a potential source of prejudice.

gues that if it is determined in district court that Shelton lacks standing, King Ranch will be estopped from arguing in the fiduciary suit that Shelton should get relief from Exxon. King Ranch therefore contends that it will suffer no prejudice under either scenario. We need not determine whether King Ranch's analysis is entirely correct because at this point, having of its own accord sought dismissal from the lawsuit, King Ranch is, as it concedes, estopped in later proceedings from claiming that it was prejudiced by its absence from the present conflict.

As far as the other royalty owners are concerned, it is obvious that Rule 19 does not contemplate joinder of any party who might possibly be affected by a judgment in any way. There is no evidence before this court upon which to base a determination that entities who are not currently parties to the suit will be prejudiced by it. Furthermore, any decision made will have no binding effect upon a subsequent trial involving King Ranch and another party, especially since Shelton is the only party to object to the settlement.

Finally, with respect to the contention that Shelton will be harmed, although we cannot deny the possibility that the resolution of this matter may engender subsequent litigation, this spectre does not make King Ranch anything more than a necessary party to the suit. As we stated in *Boone v. General Motors Acceptance Corp.*, 682 F.2d 552 (5th Cir.1982), it is the threat of *inconsistent* obligations, not the possibility of multiple litigation or a subjective preference for state court, that determines Rule 19 considerations. "While it is conceivable that following this litigation in federal court a second suit could result ... judicial economy and convenience do not in themselves provide grounds for dismissal." *Boone*, 682 F.2d at 554. We thus conclude that the absence of King Ranch from this litigation will not be prejudicial to King Ranch, Shelton or Exxon, so as to justify holding that King Ranch is an indispensable party and thus requiring dismissal of this litigation.[4]

We therefore hold that while King Ranch may be a necessary party, it is not an indispensable one. A party is indispensable only if the claims raised cannot be adjudicated without it. *Bourdieu v. Pacific Western Oil Co.*, 299 U.S. 65, 57 S.Ct. 51, 81 L.Ed. 42 (1936). This lawsuit is concerned with Shelton's rights against Exxon, which may be fully determined between the two parties, without prejudice to any party.

Having thus concluded that King Ranch is only a necessary party, we hold that the district court did not have discretion to refuse to proceed without it. *IMFC*

---

**4.** Our discussion of the first factor under Rule 19, prejudice, necessarily includes examination of the other four factors. For the sake of clarity, however, we lay out our reasoning on each of the remaining Rule 19 factors here.

The second factor under Rule 19 concerns to what extent protective measures can be used to lessen or avoid prejudice. Because we find that no prejudice exists, it is unnecessary to address this factor (but see footnote 3).

Third, we must determine whether a judgment rendered in King Ranch's absence will be adequate. We hold that it will be. If Shelton has standing to sue Exxon, it can obtain full compensation from Exxon without King Ranch. If Shelton's suit is actually barred by King Ranch's settlement, Shelton is not prevented from filing suit against King Ranch at a later time. In short, Shelton's claim against King Ranch is merely an alternative cause of action to the issue at bar, i.e., Exxon's liability to Shelton. Exxon's liability may be decided without the joinder of King Ranch.

Finally, we must determine whether the plaintiff will have adequate remedy if the action is dismissed for nonjoinder. We note that Shelton has already refiled his claims in state court and could, presumably, obtain relief there if it is denied here. It is our duty, however, to retain federal jurisdiction where possible. "If the case may be completely decided as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the Court cannot reach ... ought not to prevent a decree upon its merits." *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 121, 88 S.Ct. 733, 744, 19 L.Ed.2d 936 (1968) (quoting *Elmendorf v. Taylor*, 10 Wheat. 152 at 166–68, 6 L.Ed. 289 (1825)). This is especially true here where these parties have been in litigation for almost a decade and are now, relatively speaking, only a short time away from their day in court. To order them back to the drawing board at this juncture would be a particularly inequitable result.

*Professional Services of Florida, Inc. v. Latin American Home Health Inc.,* 676 F.2d 152 (5th Cir.1982). Abstention is permitted only under extraordinary circumstances, which are not present here. *Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). The district court's dismissal for lack of subject matter jurisdiction was, therefore, in error.

### V

Because this case is remanded to federal court, Shelton's petition for writ of mandamus, requesting that we remand the case to state court rather than dismiss for lack of jurisdiction, is rendered moot. The petition for writ of mandamus is, therefore, denied.

For the reasons above, we reverse the decision of the district court and retain federal jurisdiction, and remand this case to the district court.

REVERSED AND REMANDED.